**In re Steve P. SCHREIBER, Debtor.**

**Donna L. SCHREIBER, Plaintiff,**

v.

**Steve P. SCHREIBER, Defendant.**

**Bankruptcy No. 1–88–02506.
Adv. No. 1–88–0190.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

May 8, 1989.

Diane E. Books, Norwood, Ohio, for defendant.

Edward J. Collins, Cincinnati, Ohio, for plaintiff.

Charles Caldwell, Cincinnati, Ohio, U.S. Trustee.

## DECISION

BURTON PERLMAN, Chief Judge.

In this adversary proceeding, plaintiff, the former wife of defendant/debtor seeks relief pursuant to 11 U.S.C. § 523(a)(5), contending that certain obligations imposed upon defendant "by reason of a decree of alimony and a decree of divorce in the Common Pleas Court of Hamilton County, Division of Domestic Relations", are not dischargeable.

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(I).

We find the following facts, since they are the subject of a stipulation of facts submitted by the parties. On September 27, 1983, a Decree of Alimony only was entered in the Court of Common Pleas, Division of Domestic Relations, Hamilton County, Ohio, between plaintiff and defendant. Said Decree of Alimony incorporated and adopted a Separation Agreement. The Decree of Alimony and Separation Agreement awarded custody of the parties' three minor children to the plaintiff and defendant was to pay support in the amount of $125.00 every two weeks for the minor children. He agreed to pay all marital expenses and debts, and pay all medical expenses for the minor children. Defendant also agreed to make all mortgage payments on the marital residence. The marital residence was awarded to plaintiff. Subsequently, on September 22, 1987, the parties were divorced. That Decree of Divorce awarded custody of the remaining minor child to plaintiff and ordered defendant to pay $62.50 per week as and for child support. The Decree of Divorce did not disturb the orders contained in the prior Decree of Alimony and Separation Agreement.

The parties have framed the issues here to be determined as whether the payments provided in paragraphs 4, 5 and 6 of the Separation Agreement are in the nature of alimony, maintenance and support, and therefore nondischargeable. Such paragraphs said:

ARTICLE 4. MARITAL EXPENSES

Husband is to pay all marital expenses including but not limited to the following: Prudential ordinary life family insurance, Zayre, Goodyear Tire, Postal Credit Union, One-half car loan to Postal Credit

Union, Sears, Shillitos, McAlpins, Visa, Elder Beerman, Aluminum Siding payment, CG & E bill, water bill and is responsible for the High School tuition for the three children of the parties.

Wife shall be responsible for the tuition at St. Peter & Paul for Todd and Tiffany and the Prudential mortgage insurance on husband's life.

ARTICLE 5.  MEDICAL INSURANCE

Husband shall maintain, and keep in full force and effect, for the dependent children as well as the wife, a program of hospitalization and medical insurance at least equivalent to that which he presently carries through his place of employment.  Husband is to pay all outstanding medical, dental, optical and pharmaceutical bills not covered by major medical insurance for the minor children as well as the wife.

ARTICLE 6.  REAL ESTATE

Wife is to have exclusive occupancy of the marital residence.  In consideration of the fact that the husband has worked with the U.S. Postal Service and has vested pension benefits and he is to retain those pension benefits he shall deed all his right, title and interest in the marital residence to the wife.  Husband shall assume the mortgage payments on the marital residence until the youngest child is 18 years of age or otherwise emancipated, indemnify wife therefrom and hold her harmless thereon.

Prior to the entry of the Divorce Decree, plaintiff, on December 15, 1986, filed a motion for contempt for failure to pay expenses.  As a result of that proceeding, the child support obligations were left unchanged; the amount due from husband to wife for reimbursement of medical and related expenses was fixed, and the terms for payment of such sum was fixed; Article 4 of the Decree of Alimony was modified so that each party was to pay one-half of the remaining outstanding obligations thereunder, husband to pay one-half of utility services thereafter, and one-half of the tuition payments; husband was to continue paying the second mortgage and the obligation to the Postal Credit Union.  The report ex-

pressly stated that the language in Article 4 requiring the husband to pay "all marital expenses including but not limited to the following" was to be abrogated, and the foregoing modifications substituted for it.

Again, on February 10, 1988, after the Decree of Divorce was entered, the wife brought further proceedings in the Domestic Relations Court.  Husband responded with a motion for an interpretation of Article 6 of the Separation Agreement.  The outcome of that proceeding was to grant the relief sought by wife in regard to mortgage payments, husband to pay the arrearage in mortgage payments, and to continue first mortgage payments in the amount of $293.73.  In addition, husband was to make up an arrearage in regard to utilities, but his obligation to contribute to utility expenses was thereafter terminated.  In addition, husband was to pay attorney fees in the amount of $275.00, together with costs of $25.00, for a total of $300.00.  Both the recommendations of the referees were adopted by the Domestic Relations Court.

This adversary proceeding came on for trial and, after hearing the evidence, we find the following additional facts.  Counsel at the hearing agreed that what was in controversy was the dischargeability of the obligation imposed upon defendant in the Separation Agreement, as modified by the decisions of the referee adopted by the Domestic Relations Court, that (1) defendant be liable for first mortgage payments on the residence until all of their children were emancipated, and (2) the same with respect to the second mortgage.  The second mortgage arose in the original amount of $10,000.00, and while it paid for aluminum siding on the house, it also consolidated other outstanding debts of the parties.  For example, a debt to Visa in the amount of some $2,000.00 was paid off.  In addition, defendant received $700.00 with which he bought furniture for his apartment after the separation, while wife received $300.00 to purchase a dining room table.

Defendant's current income from his post office employment is approximately $30,000.00 gross.  He has been able to

make the payments required by the separation agreement for as long as he did by holding a second job. Such second employment varied from time to time, but it yielded him income in the amount of $2,000.00 or $3,000.00 per year. His testimony was that he could no longer endure such second employment, and therefore was unable to make the mortgage payments, first or second. Defendant agreed that the plan of the parties at the time the Separation Agreement was entered into was to provide the children a place to live. At the time of the divorce, defendant was grossing about $23,000.00 in the postal service.

■ In this Circuit, discussions of dischargeability of marital obligations must begin with *In re Calhoun*, 715 F.2d 1103 (6th Cir.1983). That decision applies three criteria in reaching a resolution on dischargeability. The first of these appears at p. 1109 where the court instructs us to decide "whether the state court or the parties to the divorce intended to create an obligation to provide" for alimony, maintenance or support. The evidence at the trial before us was perfectly clear, for defendant conceded that at the time the Separation Agreement was entered into in 1983 it was his intention to provide a proper home for his children. This obligation is in the nature of support. *In re Wright*, 51 B.R. 630 (Bankr.S.D.Ohio W.D.1985).

*Calhoun* demands next that we consider whether the obligation has the effect of providing the support necessary to see to the daily needs of the former spouse and children. If the spouse could not at the time of the bankruptcy filing maintain daily necessities were that spouse also to have the mortgage obligation, then a finding that the obligation is in the nature of alimony, maintenance or support is warranted. In this case, while it is true that plaintiff worked during the marriage, after the beginning of the marriage, she worked only part-time because of the obligation to see to the rearing of the children. While there was some income earned by her, the record is clear that she did not have the ability as well to pay the aforementioned mortgage obligations.

The third of the *Calhoun* criteria is that the court should determine whether the amount of the obligation in question is "manifestly unreasonable" considering state law, as well as the concept of a fresh start under the Bankruptcy Code.

■ *Calhoun* bids us consider (footnote 11, p. 1110) whether circumstances of the debtor have so changed as to warrant a finding that it would be inequitable to require that the debtor maintain his continuing obligations pursuant to the original agreement. It is really this ground upon which defendant relies in resisting plaintiff's attack. More specifically, defendant contends that, applying this prong of *Calhoun*, he should be accorded relief from his obligation to pay the $295.00 per month on the first mortgage, and the $275.00 per month on the second mortgage. Considering defendant's monthly expenses, which now include $100.00 per month in college expenses for his son who now lives with him, together with the fact that defendant is no longer able to hold a second job, we conclude that his alimony or maintenance obligations should be reduced. We consider as well that this debtor is paying $320.00 per month in child support. Having concluded that the payment of the second mortgage by defendant, notwithstanding that he agreed to it, is "manifestly unreasonable in view of the earning power and financial status" of debtor, we hold that debtor's assumption of the second mortgage exceeds his ability to pay and therefore "should not be characterized as in the nature of support."

We thus reach the conclusion that defendant's obligation regarding the second mortgage, both as to amounts which are in arrears as well as future obligations, are dischargeable, while his obligations with respect to the first mortgage, both as to arrearage and ongoing payments until Tiffany reaches the age of 18, are in the nature of alimony and therefore nondischargeable.