**In re Lloyd J. ANGEL, Debtor.**

**Eve A. ANGEL, Plaintiff,**

**v.**

**Lloyd J. ANGEL, Defendant.**

**Bankruptcy No. 2–86–03058.**
**Adv. No. 2–88–0117.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

Sept. 13, 1989.

Mark J. Stanziano, Columbus, Ohio, for plaintiff.

Louis W. Cennamo, Columbus, Ohio, for debtor.

Charles M. Caldwell, Office of the U.S. Trustee, Columbus, Ohio, Asst. U.S. Trustee.

## OPINION AND ORDER ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

R. GUY COLE, Jr., Bankruptcy Judge.

This adversary proceeding is before the Court pursuant to a complaint filed by Eve A. Angel, the former wife of the debtor, Lloyd J. Angel, seeking this Court's determination that certain debts arising from the parties' divorce decree are excepted from the general discharge. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this judicial district. This action is a core proceeding which the Court may hear and determine. 28 U.S.C. § 157(b)(1) and (2)(I). The following opinion and order shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### I. Statement of Facts

Lloyd J. Angel ("Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on March 25, 1987. Along with his petition, Debtor also filed a completed "Schedule A—Statement of All Liabilities of Debtor" (Jt. Ex. IV), purportedly listing, *inter alia*, the names and addresses of all his creditors. The schedule did not, however, list Debtor's *former wife*, Eve A. Angel ("Plaintiff"), as a creditor.

The Court, by order and notice issued March 31, 1987, set June 29, 1987, as the last day for filing complaints objecting to Debtor's discharge or the dischargeability of a specific debt. Plaintiff did not receive a copy of this order and notice, and thus was unaware of the bar date for filing such complaints. Debtor amended Schedule A on April 15, 1987, and added several previously-omitted creditors, but again did not list Plaintiff as a creditor (Jt. Ex. V).

On February 19, 1988, Plaintiff filed in the Franklin County Court of Common Pleas, Division of Domestic Relations ("Domestic Court"), a Motion for an order citing Debtor for contempt on the basis of his alleged noncompliance with orders of that court. The following month, on March 22, 1988—nearly one year after filing his original bankruptcy schedules—Debtor filed a second amendment to Schedule A, adding Plaintiff and two other parties as creditors. In addition to listing Plaintiff as a creditor, the March 22 amendment contained a general description of Debtor's obligations to Plaintiff pursuant to the parties' Judgment Entry–Decree of Divorce ("Divorce Decree"). Plaintiff's counsel was served with a copy of the amendment by regular U.S. mail on March 18, 1988. Plaintiff, fearful that the Debtor was attempting to discharge his obligations to her under the Divorce Decree (although no such intention was expressed in the March 22 amendment) filed her complaint on May 20, 1988. Plaintiff's complaint requests a finding that Debtor's obligations to her under the Divorce Decree, as further set forth in the March 22 amendment to Schedule A, are nondischargeable in his bankruptcy case.

Plaintiff and Debtor were married on January 31, 1969. Their 18–year marriage was formally terminated on March 4, 1987, by entry of the Divorce Decree, although they had separated in February, 1986. Three children were born as issue to the marriage, one of whom has reached the age of majority but for whom Debtor continues to have a support obligation under the terms of the Divorce Decree.

The parties appeared in the Domestic Court for trial on Plaintiff's complaint for divorce on February 2, 1987. As is not uncommon in the Domestic Court, Plaintiff and Debtor, through their respective attorneys, negotiated for several hours that morning with respect to their disputes concerning alimony, custody, child support, and division of property. The negotiations were conducted in an attempt to avoid an actual trial on the complaint.

Plaintiff and Debtor resolved their disputes that day and memorialized the terms of their agreement on what is commonly referred to in Domestic Court as a "settlement sheet" (Jt. Exs. I, IX). The terms of the settlement sheet subsequently were incorporated into the Divorce Decree, which was presented to and signed by the Domestic Court judge on a later date. The pertinent terms of the Divorce Decree, for our purposes, provide as follows:

(A) Debtor shall pay Plaintiff weekly the sum of fifty dollars ($50.00) per child, plus poundage, "as and for child support." (Divorce Decree, p. 2)

(B) Debtor shall pay Plaintiff weekly the sum of two hundred dollars ($200.00) plus poundage "as alimony." (Divorce Decree, p. 3)

(C) Debtor shall maintain a policy of insurance for the medical, dental, and hospitalization expenses incurred by the children. (Divorce Decree, p. 3)

(D) Debtor shall provide Plaintiff with the van [she was then driving], or a comparable vehicle, without expense to Plaintiff, for a period of two (2) years. (Divorce Decree, pp. 3–4)

(E) Debtor shall pay Plaintiff "as a further measure of the equitable division of marital property" the sum of $10,000 at the rate of $2,000 per year for five consecutive years. (Divorce Decree, p. 4)

(F) Debtor to pay, "as additional child support," one-half of the children's annual tuition at Worthington Christian School. (Divorce Decree, p. 5)

(G) Debtor shall pay Plaintiff's divorce counsel the sum of $2,000 as attorney fees and expenses for the divorce action. (Divorce Decree, p. 5)

At the time of the divorce, Debtor was fifty percent (50%) owner of two businesses, American Refractory, Inc. and Heat Recovery, Inc. Pursuant to the Divorce Decree, Debtor agreed to place his ownership interest in the two companies in an irrevocable trust for the benefit of his children. Debtor serves as trustee under the trust. The Divorce Decree provides that the children will receive their share of the trust corpus at age 35. Plaintiff had hoped that the award of the trust corpus would "secure the children's future" because they eventually would receive stock of some value and dividends thereon.

Under the Divorce Decree, Debtor was awarded the proceeds of an Individual Retirement Account, a camper, a motorcycle and certain personal effects. Plaintiff was awarded the balance of the marital property, including the marital residence which had been purchased utilizing a $12,000 inheritance from her grandmother as the down-payment.

Plaintiff has a high-school education but few marketable job skills. Prior to her divorce, Plaintiff worked in the home and assumed primary responsibility for raising the children and maintaining the household. Debtor discouraged Plaintiff from working outside the home, preferring that he assume responsibility for the family's financial support. She assumed the role of homemaker for the many years that Debtor worked with his brothers and other family members in a family-owned and operated refractory business.

Plaintiff and Debtor led an extremely comfortable lifestyle during those years. When, a few years ago, that refractory business began failing, Debtor withdrew from the business and formed American Refractory. Plaintiff assisted the Debtor, without compensation, in the start-up phase of the new business, including answering telephones, reviewing mail, and consulting with customers regarding orders. When American Refractory relocated from the parties' home to a commercial location, Plaintiff apparently was paid a nominal salary.

Debtor also possesses a high-school education. Debtor has received some vocational training, including certification as an over-the-road truck driver. Debtor, who is president and chairman of the board of American Refractory, asserts that the company is on the precipice of failure. The operational status of Heat Recovery is unclear, although the Court presumes that it, too, is failing or no longer in business.

Plaintiff and Debtor were aware when they separated and entered into the Divorce Decree that Debtor was contemplating relief in the bankruptcy court. Plaintiff advised Debtor against such a course of action, but was assured by Debtor that he would not attempt to discharge in bankruptcy any of his divorce-related obligations. For that reason, neither Debtor nor his counsel—despite their legal obligations—listed Plaintiff as a creditor until March 22, 1988, nearly a year after Debtor filed his petition. The timing of this amendment—a month after Plaintiff filed her motion in the Domestic Court for a citation of contempt against him—suggests the listing of Plaintiff as a creditor at this late juncture was precipitated by her motion for the issuance of a contempt citation against Debtor in Domestic Court. By then, the last day for objecting to discharge or dischargeability had passed.

Not long after receiving notice of the amendment Plaintiff filed her complaint in this Court. Plaintiff readily admits that she had actual knowledge of Debtor's bankruptcy case prior to Debtor's second amendment to his schedules; Plaintiff simply did not know until her counsel contacted her about the March 22, 1988 amendment that the Debtor had decided to classify her as a creditor with, arguably, dischargeable claims.

Prior to the February 2, 1987, scheduled trial in Domestic Court, Plaintiff had expressed her fear—she says she was "petrified"—at the prospect of having to support herself and three children without her husband's financial support or job skills. Debtor assured Plaintiff that he would pay her the sum of $10,000 to be used in obtaining much-needed job-related training and in assisting her and the children in their daily support needs. Plaintiff believed she would receive the $10,000 in one lump-sum but agreed, during the negotiation process on February 2, to the receipt of five, equal annual installment payments of $2,000 each. Plaintiff clearly perceived the $10,000 as a support obligation, not as a division of existing marital property. Debtor does not recall this conversation with Plain-

tiff, but was unable to refute its occurrence.

The Court finds that the Debtor agreed to pay Plaintiff the sum of $10,000 as additional alimony and child support. Considering Plaintiff's limited financial resources, payment of the $10,000 clearly would have had the effect of providing daily support to Plaintiff and her children. Debtor, however, never made the first, or any subsequent, payment of this obligation.

Plaintiff and Debtor also reached an agreement regarding other support and property division matters. They agreed, based on Debtor's 1986 income of approximately $35,000, that Plaintiff should receive $200 weekly as alimony. Plaintiff needed the alimony even though she was awarded possession of the marital residence and substantial equity in it. Debtor also agreed to pay Plaintiff the sum of $150 weekly for the support of their three children. (Debtor concedes that this child support obligation is nondischargeable.) Debtor further agreed to pay one-half the children's school tuition and provide a van, or comparable vehicle, for two years at no cost to Plaintiff. Finally, Debtor agreed to maintain insurance for the children's medical, dental and hospitalization expenses. The evidence establishes overwhelmingly that these obligations were intended by both parties to create alimony, support or maintenance obligations, and the Court so finds. These obligations also had the effect of providing support necessary to ensure that the daily needs of the Plaintiff and her children were satisfied.

Prior to the failure of his family's business, Debtor may have earned as much as $72,000 annually, with considerable fringe benefits from the failed family business and American Refractory. (Debtor disputes that he ever earned this much.). Debtor's income has decreased dramatically over the past few years, however. In 1987, Debtor earned approximately $18,000. During that year he was able to pay Plaintiff nearly $17,000 pursuant to the terms of the Divorce Decree, largely by taking cash advances against, or in excess of, future salary out of accounts main-

tained by American Refractory. The Internal Revenue Service recently has commenced an audit of American Refractory and possible unpaid federal taxes owed by Debtor.

Debtor's arrearage for alimony and child support payments under the Divorce Decree approximates $8,300. Additionally, Debtor has made no payments on the $10,000 obligation or toward the children's tuition expenses. Debtor's arrearage approximates $2,400 on the tuition obligation. The amount of Debtor's arrearage for school tuition has been reduced by anonymous donations made to the school toward the children's tuition expenses during the past few years. Nevertheless, in the event the arrearage is not cured, and suitable arrangements are not made for the payment of tuition this school year, the children might not be permitted to continue their education at Worthington Christian School. They have attended that school since the inception of their education.

Despite the arrearages Debtor has made substantial payments to Plaintiff for her support as well as the support of the children. He has also assisted the children financially, when possible, in a variety of ways, including the purchase of clothes and school supplies, and the payment of certain expenses for his eldest son's automobile. Debtor has made alimony and child support payments to Plaintiff approximating $37,000 over the past three years, which, exclusive of bonuses, loans or draws against future salary that he has obtained from American Refractory, represents the lion's share of his income. Coincidentally, Debtor may have placed himself in some jeopardy with the Internal Revenue Service, at least as to an increased liability for taxes, by paying Plaintiff with advances against salary and not paying certain tax obligations for the company or himself.

## II. *Legal Discussion*

The starting point for the Court's analysis is 11 U.S.C. § 523(a)(5), which provides as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

. . . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support; . . . .

The legislative history to § 523(a)(5) is unequivocal: what constitutes alimony, maintenance or support will be determined under the bankruptcy laws, not state law. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 363 (1977) and S.Rep. No. 989, 95th Cong., 2d. Sess. 77–79 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787; *Singer v. Singer (In re Singer)*, 18 B.R. 782, 783 (Bankr. S.D.Ohio 1982), *aff'd.* 787 F.2d 1033 (6th Cir.1986). The labels utilized by the parties in the Divorce Decree are not, therefore, controlling as to the true nature of the obligations at issue. *Id.*

The issues presented for determination in this case are controlled by the Sixth Circuit's decisions in *Calhoun v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir.1983) and *Singer v. Singer (In re Singer)*, *supra*. In *Calhoun*, the debtor appealed the bankruptcy court's summary judgment that his assumption of five loan obligations pursuant to a separation agreement between him and his former wife were "in the nature of" support or alimony and therefore nondischargeable debts under 11 U.S.C. § 523(a)(5). The bankruptcy court had concluded that the language of the separation agreement controlled the issue of dischargeability unless the compelling weight of the evidence suggested that the agreement would work a manifest injustice. The Sixth Circuit disagreed, holding

that the bankruptcy court applied an incorrect legal standard by improperly shifting the burden of proof from the plaintiff spouse to the debtor to show that the agreement does not mean what it says or work a manifest injustice. The Sixth Circuit ruled that:

> Placing this degree of reliance upon the language of the parties' agreement and placing the burden of persuasion on the debtor are legal errors....

715 F.2d at 1111. The Sixth Circuit reversed the judgment of the bankruptcy court and remanded the case for further proceedings consistent with its opinion.

In reaching its decision in *Calhoun,* the Sixth Circuit articulated a four-part test to assist the bankruptcy court in determining whether an award is a support obligation as opposed to a property settlement. The elements of this four-prong test are as follows:

(1) whether the intent of the state court or the parties was to create a support obligation;

(2) whether the support provision has the actual effect of providing necessary support;

(3) whether the amount of support is so excessive as to be unreasonable under traditional concepts of support; and

(4) if the amount of support is unreasonable, how much of it should be characterized as nondischargeable for purposes of federal bankruptcy law.

*Calhoun,* 715 F.2d at 1109–11; *Singer,* 787 F.2d at 1036. Although *Calhoun* involved a debt-assumption provision in a separation agreement, the language of the court's opinion has general applicability in all cases brought under § 523(a)(5). *Singer,* 787 F.2d at 1038–39 n. 2.

In *Calhoun,* the Sixth Circuit noted that "an excessive allowance [of support] is at odds with the fresh start concept underlying federal bankruptcy law." 715 F.2d at 1110. The Sixth Circuit added that:

> If the circumstances of the debtor have changed from the time the obligation to the former spouse to pay joint debts was created so as to make such

support now inequitable the bankruptcy court may consider the debtor's *current* general ability to pay insofar as it relates to the *continuing* obligation to assume the joint debts.

715 F.2d at 1110 n. 11 (emphasis in original). Yet, the inquiry is a limited one and it is not intended that the bankruptcy court "sit as a 'super divorce' court. [R]ather, the purpose of such inquiry is to ensure that the degree of support ..., particularly in uncontested cases, does not clearly exceed that which might reasonably have been awarded as support by a state court after an adversarial proceeding." 715 F.2d at 1110 n. 12.

In determining whether the award is excessive, the Court must examine the factors typically employed by Ohio domestic relations' courts in determining awards of alimony and child support. Section 3105.18(B), Ohio Revised Code, sets forth a nonexhaustive list of the relevant factors to be considered in determining the need for and amount of alimony:

> (B) In determining whether alimony is necessary, and in determining the nature, amount, and manner of payment of alimony, the court shall consider all relevant factors, including, but not limited to, the following:
>
> (1) The relative earning abilities of the parties;
>
> (2) The ages, and the physical and emotional conditions of the parties;
>
> (3) The retirement benefits of the parties;
>
> (4) The expectancies and inheritances of the parties;
>
> (5) The duration of the marriage;
>
> (6) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;
>
> (7) The standard of living of the parties established during the marriage;
>
> (8) The relative extent of education of the parties;
>
> (9) The relative assets and liabilities of the parties;

(10) The property brought to the marriage by either party;

(11) The contribution of a spouse as homemaker.

O.R.C. § 3109.05 concerns child support and provides:

(A) In a divorce, dissolution of marriage, alimony, or child support proceeding, the court may order either or both parents to support or help support their children, without regard to marital misconduct. In determining the amount reasonable or necessary for child support, including the medical needs of the child, the court shall consider all relevant factors including:

(1) The financial resources of the child;

(2) The financial resources and needs of the custodial parent and of the non-custodial parent, when there is only one custodian;

(3) The standard of living the child would have enjoyed had the marriage continued;

(4) The physical and emotional condition of the child;

(5) The financial resources and needs of both parents, when there are joint custodians;

(6) The educational needs of the child and the educational opportunities that would have been available to him had the circumstances requiring a court order for his support not arisen.

■ Applying the foregoing considerations, the Court concludes that the obligations at issue are nondischargeable debts under 11 U.S.C. § 523(a)(5). Specifically, the following obligations are found to be nondischargeable: Debtor's obligation to pay Plaintiff $50 weekly per child as child support; Debtor's obligation to pay Plaintiff $200 weekly as alimony; Debtor's obligation to maintain insurance policies for the benefit of the children; Debtor's obligation to provide a van or comparable vehicle for a two-year period, which did not occur; Debtor's obligation to pay Plaintiff $10,000; and Debtor's obligation to pay one-half of the children's annual tuition at Worthington Christian School. Clearly, under § 523(a)(5) and the Sixth Circuit's decisions in *Calhoun* and *Singer*, the parties

had the intent, and the obligations had the effect, of providing necessary support and, thus, are nondischargeable. Likewise, Debtor's agreement to pay Plaintiff's divorce counsel the sum of $2,000 is a nondischargeable support obligation. As noted by Chief Judge Perlman of this district:

It is by now a well established rule in federal bankruptcy law that whether or not an attorney's fee is to be regarded as support for purposes of § 523(a)(5) turns upon whether the litigant awarded the attorney's fee was successful in his suit to secure support. That is, dischargeability of attorney's fees turns on the dischargeability of the underlying debt sought to be enforced. *In re MacDonald,* 69 B.R. 259, 278 (Bankr.N.J. 1986); *In re Jackson,* 58 B.R. 72, 74 (Bankr.W.D.Ky.1986); *DuPhily v. DuPhily,* 52 B.R. 971, 978 (D.Del.1985).

*Stanjevich v. Stanjevich (In re Stanjevich),* 96 B.R. 138, 141 (Bankr.S.D.Ohio 1989). This is the majority view and we accept it.

■ The Court further finds that when the Divorce Decree was entered the foregoing alimony, support, and maintenance obligations were not so excessive as to be manifestly unreasonable under traditional concepts of support. To the contrary, having examined §§ 3105.18(B) and 3109.05, Ohio Revised Code, and being aware of this state's child support guidelines, both before and after Ohio's enactment of the uniform guidelines on support, this Court cannot conclude that the agreed support provisions were excessive at the time they were entered by the Domestic Court. Notably, at the time the Divorce Decree was entered, Debtor was earning approximately $35,000 annually with a 50% ownership interest in two corporations. There is no evidence that these ownership interests were valueless then or now. Debtor had always managed to obtain advances—however they are characterized—from American Refractory in amounts exceeding his reported income. Debtor also received fringe benefits from the two corporations which were of economic value to him. Considering his wife's limited earning capacity, the extend-

ed duration of the marriage, the ages and resources of the parties and their children, the parties' comfortable standard of living, and the various other considerations enumerated under Ohio law, the alimony and child support awards were not excessive nor manifestly unreasonable under traditional concepts of support when they were made or entered.

■ Our final inquiry is whether the Debtor's circumstances have so changed from the time the Divorce Decree was entered that the Court should consider the Debtor's current ability to pay these support obligations on a continuing basis. The Court notes that the Debtor has filed in the Domestic Court a motion to modify his child support payments (Jt. Ex. II). Consideration of that motion has been stayed by Debtor's bankruptcy proceeding. While the Debtor's gross income has decreased, it is not established that his resources mandate an adjustment by this Court of the various obligations set forth in the Divorce Decree. There is, for example, no evidence as to the value of Debtor's interests in American Refractory or Heat Recovery. Nor is there any evidence as to Debtor's current financial standing. To be sure, the Debtor received a bankruptcy discharge more than two years ago (Jt. Ex. VII), however this does not mean that he does not have the current ability to pay his continuing obligations under the Divorce Decree.

The bare assertion that American Refractory is "in the red" and that its accounts payable exceed its accounts receivable does not mean that Debtor's interest therein has no value. And, while Debtor and his partner are contemplating a cessation of American Refractory's business affairs, no such decision has been made. Nor is there any evidence that Debtor's interest in American Refractory, or in Heat Recovery, would be valueless upon closing or liquidation.

Debtor's experience in the refractory business suggests that his earning capacity is not insignificant. His need to seek relief in this Court appears to have resulted principally from two substantial judgments taken against him and his brothers, and other family members, by Toledo Trust in the amounts of $257,903.82 and $126,404.32, respectively, in connection with the now-defunct family business. Hence, there is no indication that the Debtor, an apparently able-bodied, middle-aged man is incapable of earning a respectable income.

■ The Court's review of the Debtor's current ability to pay his continuing obligations is permissive, not mandatory. The Court is unable, on this record, to conclude that the Debtor's circumstances have so changed from the time of the Divorce Decree as to make such support now inequitable. There simply is insufficient evidence of record to support such a finding.[1] This Court will not sit as a super-divorce court, especially where the record is as limited as it is here as to the Debtor's overall financial resources and ability to pay the obligations evidenced by the Divorce Decree.

■ The Court finds, finally, that the complaint was timely filed. In the pre-trial phase, Debtor moved for its dismissal on the ground that this adversary proceeding was not filed in a timely fashion. However, Debtor withdrew that motion prior to trial and never renewed it. Debtor's counsel nevertheless continued the suggestion of an untimely filing at trial. The Court finds that the issue of timely filing, while raised in the answer, was abandoned at trial. Even assuming it was not abandoned, Plaintiff demonstrated good cause for filing her complaint after the bar date—to the extent the bar date applied to her cause of action—by virtue of Debtor's previously-mentioned promises and assurances of excepting his obligations under the Divorce Decree from discharge in bankruptcy.

---

1. The Court admitted into evidence numerous documents identified as Plaintiff's Exhibit 3. The Debtor objected on hearsay grounds. The Court hereby modifies its ruling to admit the document captioned "Financial Statements, July 31, 1988" but reverses its ruling with respect to the other documents—monthly financial statements for other time periods—and sustains the Debtor's objection as such other documents on hearsay grounds.

834

In conclusion, Debtor's obligations to Plaintiff, as evidenced by the Divorce Decree, are hereby determined to be nondischargeable under a clear and convincing standard. This finding does not mean, however, that Plaintiff and Debtor cannot seek modification of the Divorce Decree in the Domestic Court. It simply means that this Court finds the underlying obligations to be nondischargeable and not so excessive as to warrant an adjustment by this Court.

IT IS SO ORDERED.