In re Ronnie **PORTARO**, Debtor.

Carol **PORTARO**, Plaintiff,

v.

Ronnie **PORTARO**, Defendant.

Bankruptcy Nos. 88–0354, 88–01897.

United States Bankruptcy Court, N.D. Ohio, W.D.

Oct. 18, 1989.

Raymond L. Beebe, Toledo, Ohio, for plaintiff.

Donna Weaver, Edward F. Zoltanski, Toledo, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court on Plaintiff's Complaint to Determine Dischargeability and Interest in Estate Assets. Pre–Trials were held on this Complaint, and the case was scheduled for Trial. Prior to Trial, the parties agreed to submit the issues presented in this case to the Court on Briefs, supplemented by the extensive

record from their divorce action. The Court has reviewed the Memoranda and the exhibits filed in this matter, as well as the entire record in this case. Based on that review, and for the following reasons, the Court finds that Plaintiff's Complaint should be granted in part, and denied in part.

### FACTS

Most of the facts in this case are not in dispute. On April 20, 1977 the Debtor, Ronnie M. Portaro, married the Plaintiff, Carol S. Portaro. At the time of their marriage, the parties were both undergraduates at the University of Toledo. One child was born of the marriage on March 29, 1981.

At the time of their marriage, the Defendant–Debtor had finished Three (3) years of college, and the Plaintiff had completed Two (2) years toward her degree in music. In 1978, the Plaintiff discontinued her education. The Defendant went on to receive his undergraduate degree in June of 1978. Subsequently, he entered the combined Juris Doctor/Master of Business Administration program at the University of Toledo, eventually obtaining his law degree in December 1981. Defendant became an assistant professor of management at the University of Toledo in January of 1982. He obtained his M.B.A. in March of 1983. Prior to the parties' divorce, Carol Portaro returned to school and received her music degree in March of 1987.

On June 17, 1986, the Plaintiff filed a divorce petition with the Circuit Court for the County of Monroe, Michigan. The Judgment of Divorce was entered on March 4, 1988, and set forth the several obligations of the parties. Pursuant to the divorce court's order, Carol Portaro was awarded custody of the parties' minor child. Ronnie Portaro was ordered to pay One Hundred Eighty-four Dollars ($184.00) a week child support. Medical expenses not covered by either parties' insurance were to be divided between the parties, with Mr. Portaro being responsible for Two-thirds (⅔) of such expenses. Mr. Portaro was also obligated to pay One-half (½)

of his daughter's college tuition, with some limitations. Carol Portaro was awarded alimony in decreasing amounts over a Six (6) year period. The alimony obligation was set at Four Hundred Dollars ($400.00) per month through February of 1989. A Two (2) year period of Three Hundred Dollars ($300.00) per month began on March 1, 1989. A Three (3) year period of Two Hundred Dollars ($200.00) per month commences on March 1, 1991. The total alimony to be paid under the judgment of divorce would be Nineteen Thousand Four Hundred Dollars ($19,400.00).

In addition, Carol Portaro was awarded the marital residence, and the right to live rent free, until her remarriage, sale of the home, failure to use the home as residence for the minor child, or the child attaining the age of Eighteen (18) years. The Debtor received a lien on the residence for his adjusted interest in the property's equity. Each party was directed to pay One-half (½) the monthly mortgage payment of Seven Hundred Four Dollars ($704.00), One-half (½) the monthly property taxes of approximately Two Hundred Twenty Dollars ($220.00), and One-half (½) the monthly insurance of Forty Dollars ($40.00). Thus, the Debtor's obligations for the residence total Four Hundred Eighty-two Dollars ($482.00) per month. Repairs of over One Thousand Dollars ($1,000.00) are also to be split evenly by the parties.

All the household furnishings were awarded to the Plaintiff, Carol Portaro. The Plaintiff was also awarded One-half (½) of the present value of the Debtor's pension. If it is not paid at the time the marital residence is sold, the obligation will be satisfied out of the equity in the home. The present value of the plan was calculated to be Five Thousand Five Hundred Eight Dollars ($5,508.00).

Mr. Portaro was ordered to assume the debts of the marriage, and hold the Plaintiff harmless on those debts for which she is a co-debtor. Included within that order was a school loan in the amount of Nine Thousand Three Hundred Dollars ($9,300.00). He was also ordered to pay Carol Portaro's divorce related attorney's

fees in the amount of Five Thousand Two Hundred Dollars ($5,200.00).

Ronnie Portaro was awarded all of his businesses, including his law practice, sports agents business, and painting business. The Debtor also received the rights to all income tax refunds due for tax years 1985–1987. He was awarded a rental property, and was ordered to hold the Plaintiff harmless on the property's mortgage obligation. Certain other property was divided between the parties on a weighted basis, the Plaintiff receiving Fifty-four percent (54%) and the Defendant-debtor receiving Forty-six percent (46%). The difference in the percentages awarded was based on the court's finding of fault on the part of Mr. Portaro.

The Debtor was awarded a lien on the marital residence to secure his Forty-six percent (46%) interest in the net proceeds of sale, to be paid when the sale occurs under the conditions set forth in the Judgment of Divorce. Any unpaid obligations would be deducted from Mr. Portaro's lien interest and paid to the Plaintiff at the time of sale.

At the time of the divorce, and at the time of the filing of the Petition, Mr. Portaro was an associate professor of management at the University of Toledo. Debtor's income from teaching is Thirty-four Thousand Three Hundred Sixty Dollars ($34,-360.00) a year, with an additional Five Thousand Four Hundred Ninety-seven Dollars ($5,497.00) if he teaches summer classes. In addition, at the time of the divorce, and at the time the Petition was filed, Mr. Portaro was an associate director under a grant program at the University which paid him Sixteen Thousand Three Hundred Dollars ($16,300.00) per year. In his Brief, the Debtor indicated that the grant expired in June of 1989. Plaintiff's Reply Brief notes that contradictions and oversights were present in Mr. Portaro's testimony as to his income during the divorce trial.

Carol Portaro is a music teacher. During the 1988–1989 school year, she was employed as a permanent substitute and earning approximately Sixteen Thousand Dollars ($16,000.00) a year. She has not sought employment during summer vacations.

### LAW

The dischargeability of the disputed obligations are governed by 11 U.S.C. § 523(a)(5), which states in pertinent part:

**§ 523  Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with state or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support; ...

Under this provision, obligations which are imposed by a divorce decree, and which are in the nature of alimony, maintenance or support, are not dischargeable in a proceeding under Chapter 7. · It is well established that statements within a divorce decree which label a particular obligation as alimony or property settlement do not necessarily determine the nature of the obligation under federal bankruptcy law. *In re Singer*, 787 F.2d 1033, 1035 (6th Cir. 1986); *In re Conrad*, 33 B.R. 601, 603 (Bankr.N.D.Ohio 1983). The Court must examine the facts and circumstances of each case, and make a determination based upon federal bankruptcy law. *In re Calhoun*, 715 F.2d 1103, 1107 (6th Cir.1983); *In re Hoover*, 14 B.R. 592 (Bankr.N.D.Ohio 1981). The Court may also look to state law for guidance. *In re Calhoun, supra*, at 1107–1108.

In *Calhoun*, the Court of Appeals set forth the test for determining whether an award is a nondischargeable support obli-

gation. The elements of the *Calhoun* test have been summarized as follows:

> (a) whether the *intent* of the state court or the parties was to create a support obligation;
>
> (b) whether the support provision has the actual *effect* of providing necessary support;
>
> (c) whether the amount of support is so excessive as to be *unreasonable* under traditional concepts of support; and
>
> (d) if the amount of support is unreasonable, how much of it should be characterized as nondischargeable for purposes of federal bankruptcy law.

*In re Singer*, 787 F.2d 1033, 1036 (6th Cir.1986) (Guy, J., concurring).

In the case at bar, unlike most divorce cases which come before this Court, there is a voluminous record from the trial and other proceedings which took place in the state court. The transcript of the trial is Four Hundred Seventy-four (474) pages. The transcript of the decision of the court on the judgment of divorce is Forty-four (44) pages. There are also many exhibits, including the appellate briefs filed with the Michigan Court of Appeals. Because of the extensive record in this case, the intent of the court in awarding the various obligations can be more easily ascertained. The Court will initially address the intent of the divorce court, and the effect of each award, before considering the application of the final two elements of the *Calhoun* test to the case at bar.

First, the Plaintiff seeks to have the monthly child support of One Hundred Eighty-four Dollars ($184.00) held nondischargeable. The Debtor admits that the award was intended to be a support obligation. The Court finds that it has the effect of providing necessary support for the Debtor's minor child.

■ Second, Plaintiff's Complaint alleges that the Debtor's One-half (½) of the mortgage obligation, property taxes, and house insurance payment are nondischargeable. Again, the Debtor admits that the divorce court intended these payments to function as child support. This award also provides necessary support, allowing the

minor child and her mother to continue to reside in the former marital residence.

Third, the alimony awarded was intended to provide support for both the Debtor's child and his former spouse as she continues her education. It appears that the award has the effect of providing necessary support for those purposes.

■ Fourth, the state court held that Mr. Portaro would be responsible for the educational loans that were outstanding, and hold Mrs. Portaro harmless on those obligations. In so ruling, the divorce court indicated that the hold harmless provision on the student loans was taken into account in making the other awards. *See, Transcript of Decision of the Court on the Judgment of Divorce*, at 36. Judge Lavoy explained that Mrs. Portaro may never reach the earning capacity enjoyed by Mr. Portaro, and that he had specifically taken that fact into consideration. *Id.* Accordingly, it appears that the divorce court intended the hold harmless provision to contribute to support of Mrs. Portaro and the minor child. Moreover, it should be noted that the Debtor has stated that the loans were used primarily for the support of the parties between 1977 and 1983. *Trial Brief of Defendant*, at 4. The award of the educational loans to Mr. Portaro also has the effect of providing necessary support to the Debtor's former family.

■ Fifth, Mr. Portaro was ordered to pay Mrs. Portaro's attorney's fees incurred in the divorce proceeding. The Debtor contends that the award of fees was improper under Michigan law. However, this Court is not a court of appeals for Michigan domestic relations matters. The only issues to be properly addressed in this case are questions of dischargeability. In this case, the record appears to reflect the state court's intention to prevent economic harm to Mrs. Portaro due to the untimeliness of certain actions taken by Mr. Portaro during the divorce litigation. *See, Transcript of Decision of the Court on the Judgment of Divorce*, at 26–28. These statements indicate an intention to provide support to Mrs. Portaro, and they have that effect.

This Court has considered the fee issue in a number of prior cases, and has consistently held that awards of attorney's fees in divorce proceedings are nondischargeable. *In re Sigworth*, 60 B.R. 137 (Bankr.N.D. Ohio 1986); *In re Conrad*, 33 B.R. 601, 603 (Bankr.N.D.Ohio 1983); *In re Brace*, 13 B.R. 551, 553 (Bankr.N.D.Ohio 1981). While this Court's position may have once been in the minority, it appears that this line of cases is now in accord with the majority view. *See*, Annotation, *Debts for Alimony, Maintenance, and Support as Exceptions to Bankruptcy Discharge, Under § 523(a)(5) of Bankruptcy Code of 1978 (11 USCS § 523(a)(5))*, 69 A.L.R. Fed. 403, § 6b at 419–430 (1984) (Notably, the 1989 Supplement to 69 A.L.R. Fed. lists Eighteen (18) new cases holding that debts awarded for a spouses attorney's fees are not dischargeable under § 523(a)(5), and no new cases allowing discharge.); Ravin, Rosen, *The Dischargeability in Bankruptcy of Alimony, Maintenance and Support Obligations*, 60 Am.Bankr.L.J. 1, 17 (1986).

Other courts have held that divorce related attorney's fees are nondischargeable when the litigant awarded fees was successful in securing support in the divorce action. *In re Angel*, 105 B.R. 825, 832 (Bankr.S.D.Ohio 1989); *In re Stanjevich*, 96 B.R. 138, 141 (Bankr.S.D.Ohio 1989); *In re Jackson*, 58 B.R. 72, 74 (Bankr.W.D.Ky. 1986). Under this criteria, the attorney's fees would also be nondischargeable as Mrs. Portaro was awarded support in the judgment of divorce.

■ Sixth, the Debtor asserts that his obligation to pay for part of his child's college education should be dischargeable. The record reflects that the Debtor initially requested that he be made responsible for the educational expenses. *Transcript of Decision of the Court on the Judgment of Divorce*, at 22–24. The state court complied with that request. Other courts have held obligations to pay higher education expenses to be nondischargeable. *See, Sylvester v. Sylvester*, 865 F.2d 1164 (10th Cir.1989); *In re Harrell*, 754 F.2d 902 (11th Cir.1985); *Boyle v. Donovan*, 724 F.2d 681 (8th Cir.1984); *In re Magee*, 98 B.R. 62

(Bankr.M.D.Fla.1989); *In re Pierce*, 95 B.R. 154 (Bankr.N.D.Cal.1988); *In re Brown*, 74 B.R. 968 (Bankr.D.Conn.1987); *In re Bedingfield*, 42 B.R. 641 (S.D.Ga. 1983). It appears that Mr. Portaro's obligation to pay a portion of the college expenses of his child were intended as support, and will have that effect when and if the child attends college. Accordingly, under the first two prongs of the *Calhoun* test, the debt is nondischargeable.

■ Seventh, the Debtor has contested the award of a share of the present value of his pension to Mrs. Portaro. The amount awarded appears to be Five Thousand Five Hundred Eight Dollars ($5,508.00). Judge Lavoy ordered that if the amount due on the pension was not paid at the time of the sale of the marital residence, the equity in the property would be used to satisfy the pension obligation. The state court discussed the fact that Mr. Portaro would be receiving a sum of Three Hundred and Fifty Eight Dollars ($358.00) a month in the year 2011. *Transcript of Decision of the Court on the Judgment of Divorce*, at 8–9. Judge Lavoy also discussed the fact that Mrs. Portaro made material contributions to the household which entitled her to a portion of the pension. *Id.* at 9–11. The Court notes that Mrs. Portaro does not have a vested pension of her own.

A pension is, by its nature, intended to provide support to the recipient upon retirement. In the present case, it appears that the award of a portion of Mr. Portaro's pension was intended to provide a substitute for the support she would have received from the stream of pension payments if the marriage had continued. Accordingly, it appears that the divorce court intended the award to function as support, and that it will provide necessary support in the future.

■ Eighth, the divorce court awarded the Debtor a rental property, and ordered that Mr. Portaro hold the Plaintiff harmless on the first and second mortgages, which she had cosigned. The Debtor asserts that these obligations are dischargeable. A review of the transcript of the

divorce court's comments reflect that Judge Lavoy believed that there was equity in the rental property. *Transcript of Decision of the Court on the Judgment of Divorce*, at 28–29. While the court did order Mr. Portaro to hold Mrs. Portaro harmless on the debt, it does not appear that the court intended to create a support obligation. Thus, under the *Calhoun* test, the debt is dischargeable. *In re Calhoun*, at 1109.

■ Finally, the Court will consider the Debtor's arguments for a reduction of his obligations under the last two parts of the *Calhoun* test. While *Calhoun* is generally applicable to cases where dischargeability is contested under § 523(a)(5), application of the third and fourth elements of the *Calhoun* test are a minority position which has been rejected by other courts. *See, Sylvester v. Sylvester*, 865 F.2d 1164, 1166 (10th Cir.1989); *Forsdick v. Turgeon*, 812 F.2d 801, 803–804 (2nd Cir.1987); *Draper v. Draper*, 790 F.2d 52, 54–55 (8th Cir.1986); *In re Harrell*, 754 F.2d 902, 906–907 (11th Cir.1985); *In re Jackson*, 102 B.R. 524, 532–533 (Bankr.M.D.La.1989); *In re Smith*, 97 B.R. 326, 329–330 (Bankr.N.D. Tex.1989); *In re Stone*, 79 B.R. 633, 639–640 (Bankr.D.Md.1987); Ravin, Rosen, *The Dischargeability in Bankruptcy of Alimony, Maintenance and Support Obligations*, 60 Am.Bankr.L.J. at 13–15. The issue in this case is whether this Court, under *Calhoun*, may properly defer to the Michigan Court of Appeals' review of the trial court's decision in the judgment of divorce, or, is application of the third and fourth elements of the *Calhoun* test mandatory despite the risk of inconsistent judgments.

It should be noted that other courts within the Sixth Circuit have reduced awards made in divorce proceedings based on the *Calhoun* criteria. *See, In re Schreiber*, 99 B.R. 380, 383 (Bankr.S.D.Ohio 1989); *In re Caughenbaugh*, 92 B.R. 255, 258 (Bankr.S. D.Ohio 1988); *In re Skaggs*, 91 B.R. 1018, 1023 (Bankr.S.D.Ohio 1988). In *Calhoun*, the Court of Appeals noted that where the awards were made by a divorce court in a contested case, the interference of the

Bankruptcy Court would seldom be necessary. *See, In re Calhoun*, at 1109–1110 n. 10. Nevertheless, in the present case, the Debtor contends that a reduction in the amount awarded is required because the state court ordered excessive support.

The posture of this case places the Court in a difficult position. While application of the final portion of the *Calhoun* test, by its nature, can strain comity between the federal and state courts, the fact that the judgment of the divorce court is currently on appeal compounds the problems associated with this type of determination. Mr. Portaro is not only contesting the divorce court's monetary awards on appeal, he is also appealing Judge Lavoy's decision on custody.

In deciding cases brought under § 523(a)(5), one of this Court's primary goals has always been to insure the welfare of the parties' minor children. A dilemma arises from the uncertainty of the outcome of the state court appeal of the judgment of divorce. If, for example, this Court were to reduce the alimony awarded to Mrs. Portaro, and the Michigan Court of Appeals determined that Mr. Portaro should not be obligated to continue payments on the mortgage obligation, the remaining awards could be inadequate to insure the support of the Debtor's child. On the other hand, if Mr. Portaro were to receive expanded custodial responsibilities, this Court is reluctant to limit the options of the Michigan courts to craft an appropriate balance of these various obligations to insure that the needs of both Mrs. Portaro and the child are met.

The Bankruptcy Court has exclusive jurisdiction to determine the dischargeability of debts pursuant to § 523(a)(2), (4) and (6). Under all other subsections of § 523, this Court has concurrent jurisdiction with any appropriate nonbankruptcy forum. *See,* Advisory Committee Note to Bankruptcy Rule 4007(c). Thus, the bankruptcy courts and the state courts have concurrent jurisdiction to determine whether a debt is excepted from discharge under § 523(a)(5). *In re Orr*, 99 B.R. 109, 110 (Bankr.S.D.Fla. 1989); *In re Pierce*, 95 B.R. 154, 157

(Bankr.N.D.Cal.1988); *In re McCracken,* 94 B.R. 467, 469 (Bankr.S.D.Ohio 1988); *In re Rickman,* 79 B.R. 753, 756 (Bankr.W.D. Tenn.1987); *In re Polley,* 74 B.R. 68, 70 (Bankr.S.D.Ohio 1987); *In re Aurre,* 60 B.R. 621, 624, (Bankr.S.D.N.Y.1986); *In re Aldrich,* 34 B.R. 776, 780 (9th Cir. BAP 1983). Using their concurrent jurisdiction, state courts have made determinations concerning the dischargeability of divorce obligations. *See, e.g., Clark v. Clark,* 40 Ohio App.3d 177, 532 N.E.2d 158 (1987); *In re Rickman, supra.*

In the present case, there has been no attempt to bring the dischargeability question before the state divorce court. However, a review of Mr. Portaro's appellate brief filed with the Michigan Court of Appeals reflects that in addition to his specific legal objections to Judge Lavoy's decision, the Debtor has also argued that the awards were simply excessive. The concern of this Court is that if Mr. Portaro is allowed to make essentially the same argument in two separate forums, there will be a substantial risk of inconsistent judgments which could be detrimental to the Debtor's minor child and spouse.

A recent decision by the Sixth Circuit Court of Appeals considered an analogous situation involving the lifting of the automatic stay to allow a divorce action to proceed in state court. *See, In re White,* 851 F.2d 170 (6th Cir.1988). In the *White* case, the Court of Appeals quoted from *In re MacDonald,* 755 F.2d 715, 717 (9th Cir. 1985):

It is appropriate for Bankruptcy Courts to avoid invasions into family law matters 'out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters.'

*In re White,* at 173.

Here, the litigation of the Debtor's divorce has not been completed in the Michigan courts. With the case in this posture, this Court is reluctant to reduce awards which have not yet been finalized. Because of the additional relief sought by the Debtor in his state court appeal, including changes in the custody order, and the many separate grounds for reduction of the divorce awards based on Michigan law, it appears that this Court should defer to the Michigan Court of Appeals, allowing that court the latitude to make any reductions it believes are necessary under Michigan law and the principles of equity.

It does not appear that the Debtor will be unfairly prejudiced by this Court deferring to the Michigan Court of Appeals. His major loss will be the opportunity to benefit from the possibility of inconsistent judgments resulting from two tribunals approaching the same issue from different perspectives. It should be noted that most bankruptcy decisions which have reduced divorce awards under *Calhoun* have done so based on changed circumstances. *See, In re Shreiber,* 99 B.R. 380, 383 (Bankr.S. D.Ohio 1989); *In re Caughenbaugh,* 92 B.R. 255, 257–258 (Bankr.S.D.Ohio 1988); *In re Skaggs,* 91 B.R. 1018, 1022–1023 (Bankr.S.D.Ohio 1988); *In re Erler,* 60 B.R. 220, 223 (Bankr.W.D.Ky.1986). In the present case, the only change in the Debtor's circumstances would be the ending of a grant program which occurred post-petition. However, the Court may only consider changes in circumstances from the time of the divorce decree to the date of the bankruptcy filing. *See, In re Maytac,* 102 B.R. 125, 127 (Bankr.S.D.Ohio 1989). Accordingly, the Michigan Court of Appeals will be considering the same financial data that this Court would use if it were to apply the third and fourth elements of the *Calhoun* test rather than deferring to the decision of the appellate court.

An additional factor in the Court's decision is the nature of the third and fourth elements of the *Calhoun* test. Divorces and awards of support are not creatures of federal law. Rather, domestic relations are governed almost exclusively by state law. The third element of the *Calhoun* test is a determination of whether the obligations are manifestly unreasonable under "traditional concepts of support". Those "traditional concepts" are necessarily based on some generalized average of the support obligations state courts are imposing in divorce and child support cases. Deferring to the greater expertise of the state appellate court appears to be appropriate in these circumstances, particularly where the

obligations were awarded in a state other than the one in which this Court sits. Moreover, any reduction would be based on the Court using factors similar to those a state court would employ. *See, In re Calhoun*, at 1110. Again, the state appellate court has greater expertise in applying such factors, and determining a reasonable level of support.

For the foregoing reasons, the Court believes that deferring to the Michigan Court of Appeals is proper under *In re White*, 851 F.2d 170 (6th Cir.1988).

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

ORDERED that, except for the deficiency on the rental property, all of the obligations imposed in the judgment of divorce be, and are hereby, Nondischargeable.

It is FURTHER ORDERED that the deficiency balance remaining after the sale of the rental property be, and is hereby, Dischargeable.

It is FURTHER ORDERED that this Court specifically defers to the Michigan Court of Appeals as to the determination of any reduction in the amount of support awarded to Mrs. Portaro.