**In re David R. BROWN, Debtor.**

**David R. BROWN, Plaintiff,**

**v.**

**Beverly M. BROWN, Defendant.**

**Bankruptcy No. 5–83–00703.
Adv. No. 5–86–0159.**

United States Bankruptcy Court,
D. Connecticut.

June 25, 1987.

Ira B. Charmoy, Charmoy & Kanasky, Bridgeport, Conn., for plaintiff.

Francis A. Teodosio, Ansonia, Conn., for defendant.

## MEMORANDUM AND DECISION

ALAN H.W. SHIFF, Bankruptcy Judge.

This adversary proceeding was brought by the plaintiff, a Chapter 11 debtor, for a determination of the dischargeability of two debts under Code section 523(a)(5)(B). Both debts arise out of a Judgment of the Superior Court of the State of Connecticut[1] which dissolved the marriage of the parties and, *inter alia,* ordered the debtor to make certain payments to the defendant, his former wife, and to his daughter for her college or post-high school education.

## BACKGROUND

### I

The complaint claiming a dissolution of the marriage and other relief was brought by the defendant in September, 1979. The debtor appeared through counsel, who on December 19, 1979 claimed the proceeding for a hearing on the "limited contested list." On July 30, 1980, the proceeding was claimed for the "Hearing List Uncontested" and judgment entered dissolving the marriage. The judgment contained the following provisions, material in this proceeding.

5. The parties hereto have submitted a written agreement dated July 23, 1980 concerning the disposition of their property which agreement the Court finds to be fair and equitable and which agreement has become part of the Court file.... And that the Court, pursuant to Section 46B–66 of the Connecticut General Statutes, as amended, having inquired into the financial resources and actual needs of the parties, finds the said Separation Agreement dated July 23, 1980 to be fair and equitable under all of the circumstances and hereby approves same and orders same to be made a part of this file hereof, and said Separation Agreement is incorporated by reference into this Judgment as if set forth at length herein; and pursuant thereto and pursuant to an oral amendment made in Court, the Court further finds the following, set forth in the Addendum attached hereto.

### ADDENDUM

6. All personal property has been satisfactorily divided between the parties herein with the exception that the Defendant Husband shall remove from the property known as 10 Holly Lane, Shelton, Connecticut, his clothes, personal belongings, tools and a stuffed chair, by August 6, 1980 at 5:00 P.M. The Plaintiff Wife shall remove from the property known as 66 Drapper Mill Road, Grantham, New Hampshire, her copper and brass bucket, Christmas tree ornaments and her and her daughter's clothes and belongings also by said date and time.

7. The Defendant Husband shall pay to the Plaintiff Wife as part of the division of the property, the sum of $50,-000.00 payable as follows:

$5,000.00 at the time the Decree of the Dissolution of Marriage is entered;

---

1. *Beverly M. Brown v. David R. Brown,* Superior Court of the State of Connecticut, Judicial District of Fairfield at Stamford, Docket No. FA 79 0042043 (July 30, 1980).

$5,000.00 ninety days thereafter. This sum is to be secured by the Defendant Husband assigning his portion of the tax refund due under the 1979 joint tax return to the Plaintiff Wife; $15,000.00 one year after the date the final Decree of Dissolution of Marriage is entered. $5,000.00 per year every anniversary date from the date of the entry of the final Decree of Dissolution of Marriage provided that, in any event, the total sum shall be due and payable six years from the date of entry of the final Decree of Dissolution of Marriage. The Defendant Husband shall execute a second mortgage and note in the sum of $40,000.00 which shall be a lien against the property known as 66 Drapper Mill Road in Grantham, New Hampshire for the benefit and on behalf of the Plaintiff Wife.

8. The Plaintiff Wife shall quit claim to the Defendant Husband all of her right, title and interest to the property known as 66 Drapper Mill Road, Grantham, New Hampshire.

9. The Defendant Husband shall quit claim all of his right, title and interest to the property known as 10 Holly Lane, Shelton, Connecticut to the Plaintiff Wife.

10. The Plaintiff and Defendant shall divide equally between them all joint bank accounts and stocks and bonds.

11. The Defendant and Plaintiff shall equally divide the tax refund due on the 1979 joint tax return, except for the assignment of the Defendant Husband's portion of the said refund as security as hereinbefore provided in this Judgment.

12. The Defendant Husband shall pay and provide for the college education or the post-high school education of the child.

19. The Plaintiff Wife makes no demand or claim for alimony.[2]

The July 23, 1980 Separation Agreement was negotiated by the parties and their attorneys over a period of approximately 11 months and is in all material respects identical to the Addendum which was made a part of the state court judgment. The Separation Agreement and the Addendum were drafted by the defendant's attorney, and the Addendum was initialed by the debtor before it was presented to the state court.

The evidence discloses that the defendant is a high school graduate with two years of college education. At the time of the judgment she was in good health and worked as a town clerk for the Town of Shelton, Connecticut where she expected to continue to be employed and to receive periodic salary increases. In addition, she had supplemental income as a sales person. Her combined annual gross income was approximately $16,224.00.[3]

The defendant's annual gross income at that time was $40,000.00 to $50,000.00. The transfer of the Grantham, New Hampshire and Shelton, Connecticut real estate, pursuant to paragraphs 8 and 9 of the state court judgment, in effect transferred the debtor's $37,500.00 equity interest in the Shelton property to the defendant and the defendant's $13,500.00 equity interest in the Grantham property to the debtor.[4] Thereafter, the debtor's interest in the Grantham property was mortgaged to secure the debtor's $40,000.00 obligation under paragraph 7 of that judgment.

The controversy here centers on debts arising out of the debtor's obligations under paragraphs 7 and 12 of the State court order.

## II

The debtor contends that his obligation to pay the defendant is dischargeable because it arises out of a division of marital property provided for in a Separation Agreement which was incorporated into the state court judgment during a hearing which was uncontested only after the defendant agreed that she would make "no demand or claim for alimony".[5] The debtor

2. Plaintiff's Exhibit 1.

3. Plaintiff's Exhibit 2.

4. Plaintiff's Exhibits 1 and 2.

5. Plaintiff's Exhibit 1, ¶ 19.

further contends that his obligation to pay for his daughter's college or post-high school education is also dischargeable since the child is now no longer a minor whom, under state law, he is obligated to support, and, in any event, private education is a luxury not includable as an item of support.

The defendant concedes that the debtor did not want to pay alimony but claims nonetheless that the obligation under paragraph 7 was lump sum alimony, payable in installments over six years while their daughter was a minor, but designated as part of a division of property for "tax purposes." The defendant also argues that the obligation to pay the educational expense under paragraph 12 was intended to provide support for their daughter after she was no longer entitled to support under state law.

## DISCUSSION

Code § 523(a)(5)(B) (1978), applicable here, provides in pertinent part:

> (a) A discharge under section ... 1141 ... of this title does not discharge an individual debtor from any debt—

>> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

>>> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

As the district court in this district recently stated in *Forsdick v. Turgeon*, Civ. No. H–85–378 (TEC), slip op. at 4–5 (D.Conn. May 13, 1986), *aff'd*, 812 F.2d 801 (2d Cir.1987)

> It is a well-settled principle of bankruptcy law that dischargeability must be determined by the substance of the liability rather than its form. *In Re Spong*, 661 F.2d 6, 9 (2d Cir.1981). In turn, that determination is to be made under the bankruptcy laws, not State laws." *Id.*

at 8, *quoting*, H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 364 (1977), *reprinted in* [1978] U.S. Cong. & Ad.News, 5787, 6320. As Congress was, undoubtedly, aware Federal courts have no jurisdiction over divorce or alimony allowances. Therefore, "Congress could not have intended that United States courts were to formulate the bankruptcy law of alimony and support in a vacuum, precluded from all reference to the reasoning of well-established law of the States." *In Re Spong, supra,* 661 F.2d at 9. Accordingly, whether the award in question was maintenance and support or a property settlement is a question of federal, bankruptcy law to be determined by this Court with appropriate reference to state law.

See also *In re Infante*, Adv. No. 5–82–374, slip op. at 3 (Bankr.D.Conn. Oct. 15, 1982); *In re Williams*, 703 F.2d 1055 (8th Cir. 1983); *Matter of Woods*, 561 F.2d 27 (7th Cir.1977); *In re Warner*, 5 B.R. 434, 440–41 (Bankr.D.Utah 1980).

As the Forsdick court further observed,

> The purpose of alimony is to meet one's continuing duty to support; *Wood v. Wood*, 165 Conn. 777, 784 [345 A.2d 5] (1974); while the purpose of property division is to unscramble the ownership of property, giving to each spouse what is equitably his. *Beede v. Beede*, 186 Conn. 191, 195 [440 A.2d 283] (1982).

*Forsdick v. Turgeon, supra,* slip op. at 5, *quoting Weiman v. Weiman*, 188 Conn. 232, 234, 449 A.2d 151 (1982).

 In analyzing the nature of an obligation arising out of a divorce decree, courts may consider a variety of factors including the label attached to the debt, the context in which the debt appears in the decree, whether the obligation terminates upon death or remarriage of the obligee, whether there are children who must be supported, and whether the obligation balances the incomes of the parties. *In re Ingram*, 5 B.R. 232, 235 (Bankr.N.D.Ga. 1980). Code section 523(a)(5) makes no distinction between an obligation which arises from an agreement of the parties and one which is ordered in the first instance by a

court. On the contrary, it is generally recognized that the issue of dischargeability raises a question of fact, requiring inquiry beyond the four corners of the document. *See In re Daviau,* 16 B.R. 421, 424 (Bankr. D.Mass.1982). Accordingly, I will consider testimony and documentary evidence relevant to the terms of the state court judgment, although the judgment itself is the most compelling evidence in this proceeding.

## I

■ It is uncontroverted that the state court judgment was based upon an agreement negotiated by the parties with the advice of their respective attorneys and that the state court, "pursuant to Section 46B–66 of the Connecticut General Statutes, as amended, having inquired into the financial resources and actual needs of the parties, [found] the said Separation Agreement dated July 23, 1980 to be fair and equitable under all of the circumstances...." A review of that judgment discloses the expressed intent of the parties to divide all of their property rather than provide for the support of the defendant. Paragraph 6 states that "[a]ll personal property has been satisfactorily divided between the parties ..."; paragraph 7 states that the debtor is to pay the defendant "as part of the division of property ..."; paragraphs 8, 9, 10, and 11 relate to the exchange of equity interests in real property and the equal division of all joint bank accounts, stocks, bonds, and a 1979 tax refund. Finally, paragraph 19 states that the defendant "makes no demand or claim for alimony." Thus, paragraph 7 read alone and in context supports the debtor's testimony that he would have contested any claim by the defendant for support and that he and the defendant therefore agreed to a division of property with no award of alimony.

Moreover, there has been no persuasive evidence to support the defendant's claim that notwithstanding the express language of paragraph 7, the parties agreed and the court ordered the debtor to make payments to her to satisfy an obligation of support. On the contrary, the evidence demonstrated that the defendant was healthy, educated, and employed at the time of the dissolution. It is also apparent that the paragraph 7 obligation would not terminate upon the death or remarriage of the defendant, a finding relied upon by other courts to support the conclusion that such a debt was in the nature of a property settlement. *See In re Taff,* 10 B.R. 101, 104 (Bankr.D.Conn.1981); *see also In re Infante, supra,* slip op. at 5.

I accordingly conclude that the defendant failed to sustain the burden of proving that the debt arising out of paragraph 7 was in the nature of alimony, *see In re Freyer,* 71 B.R. 912, 919 (Bankr.S.D.N.Y.1987); *In re Czepiga,* 27 B.R. 950, 953 (Bankr.D.Conn. 1983).

## II

■ The second controversy centers on the debtor's obligation under paragraph 12 of the state court order, which requires him to "pay and provide for the college education or the post-high school education of the child."

As noted, the debtor argues that the debt arising out of that obligation is dischargeable because the child is no longer a minor whom he is required by state law to support, *Sillman v. Sillman,* 168 Conn. 144, 152, 358 A.2d 150 (1975), and that in any event, private education is a luxury, not a necessity. Both arguments fail. The fact that the debtor is now no longer obligated by state law to support his child does not annul an agreement by him to do so, and when there is such an agreement, the obligation thereunder is nondischargeable under § 523(a)(5)(B). As previously noted, dischargeability is a federal question governed by federal, not state, law. *In re Harrell,* 754 F.2d 902 (11th Cir.1985) (rejecting the debtor's premise that an obligation is actually in the nature of support only if it could have been imposed under applicable state law); *see also Boyle v. Donovan,* 724 F.2d 681, 683 (8th Cir.1984); *In re Galpin,* 66 B.R. 127, 131 (N.D. Ga. 1985). The question then is whether an obligation to pay for a college or post-high

school education is in the nature of child support. It is in the context of this proceeding.

Apart from its significant contribution to the enhancement of the quality of life generally, education is beyond doubt of singular importance to the achievement of success in the job market. In recognition of those facts of life, it is not uncommon for parents to provide the finances for their children's post high school education. The parties here were well aware of the benefits of education and recognized the desirability of providing their daughter with the financial support to make it available to her after high school.

Accordingly, I find that the debt described in paragraph 7 is not in the nature of alimony and is dischargeable and that the debt described in paragraph 12 is in the nature of child support and is not dischargeable, and IT IS SO ORDERED.