In re Perry Richard PIERCE, individually and dba P.R.P. Construction, Debtor.

Linda PIERCE, Plaintiff,

v.

Perry Richard PIERCE, Defendant.

Bankruptcy No. 4–79–03392 HN.
Adv. No. 4–88–0323 AT.

United States Bankruptcy Court,
N.D. California.

Dec. 30, 1988.

Eric G. Dzubur, Briegleb & Dzubur, Hayward, Cal., for plaintiff.

Stephen J. Schori, Law Offices of B. Palmer Riedel, Walnut Creek, Cal., for defendant.

## MEMORANDUM OF DECISION

LESLIE TCHAIKOVSKY, Bankruptcy Judge.

In October 1979, plaintiff and defendant executed a written agreement in contemplation of their divorce, providing, among other things, that they would share equally their children's college expenses (the "college expense agreement"). At that time, their eldest child was only thirteen. In November 1979, a divorce decree was entered. Somewhat later in November 1979, defendant filed a bankruptcy petition and thereafter received a discharge of his debts.

One of the couple's children is now a sophomore in college. Plaintiff seeks a money judgment equal to half her expenditures to date for this child's support and a declaration that this amount and defendant's share of all future college expenses are excepted from discharge under 11 U.S. C. § 523(a)(5).

Having considered the facts and applicable law, the court holds that defendant's obligations under the college expense agreement are excepted from discharge under 11 U.S.C. § 523(a)(5). However, the court defers to the appropriate state court the interpretation of the college expense agreement and the calculation of the money judgment to which plaintiff is entitled.

## SUMMARY OF FACTS

Plaintiff and defendant have three children: Robbie, Jennifer and Kevin, currently 22, 19, and 17, respectively. In 1979, the Pierces' marriage failed, and the couple negotiated a divorce agreement. At the time of these negotiations, the defendant was also planning to file a bankruptcy case

to discharge his existing debts, a fact that was communicated to plaintiff during the negotiations.

On November 15, 1979, an interlocutory decree of divorce was entered by the state court. The decree provided that defendant would have custody of the elder boy, Robbie, and that plaintiff would have custody of the two younger children, Jennifer and Kevin. Plaintiff was awarded the family home, and defendant was awarded his business assets. Defendant was required to pay spousal support to plaintiff for one year and child support at the rate of $150 per child per month for Jennifer and Kevin until they reached the age of majority.

On October 29, 1979, prior to the divorce decree, plaintiff and defendant entered into a letter agreement, containing certain additional terms not included in the divorce decree. In pertinent part, the letter agreement provides as follows:

> Finally, you will recall that each of the parties have agreed with one another in consideration of the provisions of this Interlocutory Decree that they will equally pay educational expenses for the minor children after the age of 18 years for purposes of their college education. That agreement is an agreement between the parties and the children shall not become third party beneficiaries of that agreement, and it is understood that the parties may modify that agreement by mutual accord. Obviously if there is a bankruptcy it will be necessary to ratify that agreement after bankruptcy.

This provision is referred to above and hereafter as the "college expense agreement."

On December 17, 1979, defendant filed a petition seeking relief under chapter 7 of the Bankruptcy Code and subsequently received a discharge. Defendant apparently never followed the procedures set forth by 11 U.S.C. § 524(c) to reaffirm the college expense agreement.

Since the children were relatively young at the time of the divorce, the effect of defendant's bankruptcy on the college expense agreement was not immediately tested. Robbie, the eldest, chose not to attend college. Thus, the issue first arose when Jennifer enrolled as a freshman at the University of California at Santa Barbara in 1987. Jennifer asked her father to contribute $100 per month to her support at college. He declined to do so. Nevertheless, Jennifer managed to complete her freshman year, at the sole expense of her mother. Jennifer is currently a sophomore at the University of Colorado, where she works as a nanny for her board and room. Her brother, Kevin, is still in high school, but plaintiff anticipates that he will attend college the following year.

Plaintiff presented an itemized list of expenditures for Jennifer's support and education through the time of trial, which was admitted without objection. The expenditures totalled over $6,000. Defendant did not challenge the accuracy or reasonableness of any of the listed items.

Defendant contends that the college expense agreement was either not a valid contract initially or was discharged in his bankruptcy. He points out that, at a support modification hearing in state court the preceding spring, his support obligation for Kevin, his youngest son, had been increased to $325 per month based on plaintiff's representation that her expenses had increased because of Jennifer's attendance at college. He contends that plaintiff initiated this adversary proceeding because she was dissatisfied with the amount of this increase. Finally, defendant states that his financial circumstances do not permit him to contribute to his children's college education at this time. Defendant attempted to present evidence of his current financial circumstances. The court sustained an objection to the introduction of this evidence on relevance grounds.

At trial, plaintiff testified that, when she entered into the college expense agreement, she was advised that it could not, as a matter of state law, be included in the divorce decree. However, she was advised that the agreement would be unaffected by her husband's bankruptcy. She claimed to have given up valuable rights in exchange for this agreement, in particular, the opportunity to challenge her husband's valuation

of his property and earning ability. She testified that she never would have given up these rights had she thought the obligation could be discharged in her husband's bankruptcy.

Defendant testified that he had understood that the college expense agreement would be discharged in bankruptcy and that he could agree to assume that obligation after bankruptcy if he chose but could not be compelled to do so. He disputed plaintiff's testimony that she gave up valuable rights at the time of the negotiations. However, he admitted that he signed the agreement to prevent a contested divorce proceeding.

## LEGAL ANALYSIS

Defendant raises a series of legal arguments to controvert plaintiff's claim:

(1) That the college expense agreement does not constitute a contract.

(2) That the college expense agreement was breached when defendant filed his bankruptcy petition, and plaintiff is guilty of laches in bringing her claim. Alternatively, plaintiff has waived any rights she has under the college expense agreement by failing to sue for enforcement sooner.

(3) That there was no debt at the time the bankruptcy was filed. Thus, the bankruptcy court has no jurisdiction to hear this case.

(4) That the college expense agreement does not create a nondischargeable debt under 11 U.S.C. § 523(a)(5) in that: (a) it does not create an enforceable obligation, (b) the obligation was not incurred in connection with a divorce decree, and (c) the obligation is not for support.

■ Defendant's third argument is frivolous. If a contract was validly formed when the letter agreement was executed, that contract created a debt, albeit one that would not mature and become due until the children reached college age. The Bankruptcy Code defines debts as including those which have not yet matured at the time the bankruptcy petition is filed. 11 U.S.C. § 101(4), (11). A bankruptcy court clearly has jurisdiction to determine wheth-er a debt is nondischargeable under 11 U.S.C. § 523(a)(5) although its jurisdiction is concurrent with the state courts. 28 U.S.C. § 1334(b).

■ Defendant's second argument is also frivolous. Plaintiff did not breach the college expense agreement by filing a bankruptcy petition. If defendant were correct that the obligation created by the college expense agreement is dischargeable, filing the petition merely caused the obligation to be discharged. This is not equivalent to a breach.

The last sentence of the college expense agreement might be argued to constitute an agreement to reaffirm the obligation. If so, it is true that defendant breached any such agreement. However, plaintiff is not suing for breach of an agreement to reaffirm, but for breach of the underlying agreement to contribute equally to the children's college expenses. The breach did not and could not occur until one of the children reached college age. Moreover, unlike debts excepted from discharge under 11 U.S.C. § 523(a)(2), (4), and (6), an action to have a debt declared nondischargeable under 11 U.S.C. § 523(a)(5) can be filed at any time. 11 U.S.C. § 523(c); Bankruptcy Rule 4007(b); 3 Collier on Bankruptcy, § 523.15[6], p. 523–114 (15th ed. 1979).

■ The defendant's first argument—that no contract was formed—raises more substantial concerns. The formation of a contract requires mutual assent. Cal.Civ. Code §§ 1550, 1565. Normally, a contract contains some detail about how the agreement is intended to operate. Here, the agreement is so general as to leave in doubt the parties' intentions on various important questions. Does the agreement require the parties to pay out-of-state tuition or tuition at a private school or only the expense of a California state college? Does the agreement include money for food and clothing as well as direct college expenses? What about entertainment? If the determination of such questions is left to the discretion of one of the parents, who has that discretion? Or can either parent

trigger the other's obligation to· pay by paying half an expense himself or herself? Does the agreement continue in perpetuity so that, if one of the children enters college at the age of thirty, for example, defendant can be required to match plaintiff's expenditures? The written agreement answers none of these questions. No testimony was offered to assist the court in interpreting the written agreement.

Nevertheless, the court is convinced that the parties manifested an intention to contract when they signed the college expense agreement. Whether the parties intended to contract is determined by the objective manifestation of their intent, not by a subjective standard. 1 Witkin, *Summary of California Law*, Contracts, § 119 (9th ed. 1987). The language used in the college expense agreement is contractual in nature. Both plaintiff and defendant testified that the college expense agreement was pivotal in the divorce settlement. Thus, the questions raised above present issues of interpretation. They do not prevent the formation of a contract.

■ The most difficult issue is raised by defendant's final argument: that the obligation created by the college expense agreement is not excepted from discharge under 11 U.S.C. § 523(a)(5). Section 523(a)(5) provides, in pertinent part, that a debt is excepted from discharge in a case under chapter 7 of the Bankruptcy Code if:

> ... to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

> . . . . .

> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

Thus, the fact that the parties label a particular debt in a divorce agreement "support" does not mean that the court will necessarily find that it is for support.

■ Whether a debt is actually in the nature of support is determined by federal law, not state law. House Report No. 595, 95th Cong., 1st Sess. 363 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. Since there is no federal domestic relations law, the bankruptcy court must naturally consider state law in determining the appropriate federal standard. 3 Collier on Bankruptcy, § 523.15[1], pp. 523–105–523–106 (15 ed. 1979); *In re Calhoun*, 715 F.2d 1103, 1107 (6th Cir.1983). However, the definition of support under state law is not determinative of how it may be defined by 11 U.S.C. § 523(a)(5). *Shaver v. Shaver*, 736 F.2d 1314 (9th Cir.1984).

■ As noted above, the defendant raises three grounds on which his agreement to pay for half his children's college education should not be excepted from discharge. One of the three grounds—that the college expense agreement did not create an enforceable contract—has been addressed above. The second argument— that the agreement was not made in connection with a divorce decree—is not supported by the evidence. The college expense agreement was executed on October 23, 1979. The divorce decree was issued on November 15, 1979. The evidence is clear that the college expense agreement was negotiated in the context of the divorce proceedings and that the provisions contained in the college expense agreement affected the provisions in the divorce decree. Had Congress wanted to limit the exception from discharge under 11 U.S.C. § 523(a)(5) to provisions *contained in* the divorce decree itself, surely it would have said so. The phrase "in connection with" implies a broader reach.

The critical issue is raised by defendant's final argument: that a child's college education does not constitute support. Under California law, "[t]he father and mother of a child have an equal responsibility to support and educate their child in the manner suitable to the child's circumstances, taking into consideration ..." their respective earnings or capacity to earn. Cal.Civ.Code

§ 196. This duty continues as to any un-married child who is a full-time high school student and resides with a parent until such time as the child completes the twelfth grade or reaches the age of nine-teen, whichever occurs first. Cal.Civ.Code § 196.5. However, under California law, in the absence of a contractual obligation, defendant cannot be compelled to pay half his children's college expenses. *Jones v. Jones*, 179 Cal.App.3d 1011, 225 Cal.Rptr. 95 (1986). It does not necessarily follow, however, that such expenses, if contractually assumed, do not constitute support.

Whether an agreement to pay a child's college expenses constitutes a nondischargeable debt under 11 U.S.C. § 523(a)(5) appears to be a question of first impression in this Circuit. However, a number of courts in other Circuits, including two Circuit Courts, have previously addressed it. Each has found such obligations to be in the nature of support and thus excepted from discharge under 11 U.S.C. § 523(a)(5). *Boyle v. Donovan*, 724 F.2d 681 (8th Cir. 1984); *In re Harrell*, 754 F.2d 902 (11th Cir.1985); *In re Bedingfield*, 42 B.R. 641 (S.D.Ga.1983); *In re Brown*, 74 B.R. 968 (Bankr.D.Conn.1987). This court agrees.

Some courts premised their decision, in part, on the fact that the word "child" in 11 U.S.C. § 523(a)(5) was not preceded by the word "minor". See, for example, *In re Bedingfield*, 42 B.R. at 647. Another saw the phrase "... in the nature of support ..." as calling for a broad reading of the word "support". *In re Harrell*, 754 F.2d at 904. One court emphasized that both parents had college degrees and even post-graduate degrees and that the father had a substantial income. It concluded that, because college and post-graduate education were "... part of the family pattern of life ...", such expenses could be properly considered "in the nature of support" for their children. *Boyle v. Donovan*, 724 F.2d at

683. Another court found significant the importance of a college education to any child's future prospects. *In re Brown*, 74 B.R. at 973.

█ This court agrees with the cases cited above that the phrase "child support", as used in 11 U.S.C. § 523(a)(5), should not be interpreted to except from discharge only such support as could be imposed by state law. To do so would be to read restrictive language into the statute with no basis in law or policy. A contractually assumed debt for such expenses should be excepted from discharge if the parties intended it as support and if it can reasonably be construed as support.

Here, both tests are easily met. Because of its simplicity, the college expense agreement may be difficult to implement. However, its overall intention—to provide for the children's support through college—is perfectly clear.[1] It is unclear how such payments could be characterized as anything but support. This point is demonstrated by the second paragraph of Cal.Civ. Code § 196.5 which provides, in pertinent part, that:

> Nothing in this section shall be interpreted so as to limit a parent's ability to agree to provide *additional support* or to limit the court's power to inquire whether such an agreement has been made.

(Emphasis added.) The most obvious purpose of this sentence is to make it clear that parties may contract to provide for their children's college expenses even though they may not be required by law to pay such expenses in the absence of a contract. Such agreements are referred to as being for "additional support".

The last sentence of the college expense agreement can be argued to contradict a finding of intent. It appears that the au-

---

1. The court's exclusion of evidence of the parties' present financial circumstances was proper. In *In re Comer*, 27 B.R. 1018 (Bankr. 9th Cir.1983), a Bankruptcy Appellate Panel expressly declined to follow *In re Warner*, 5 B.R. 434 (Bankr.D.Utah 1980), in which the court had balanced the *present* financial health of the parties in determining whether a debt was nondis-

chargeable under 11 U.S.C. § 523(a)(5). However, the parties' financial circumstances at the time the agreement was made are relevant to a determination of intent. The evidence admitted on this issue supports the court's finding that the parties intended the agreement to provide for their children's support through college.

thor of the letter believed that the debt created by the college expense agreement was dischargeable. However, such an argument misconceives the issue. If the parties intended to contract for a debt that constitutes support under 11 U.S.C. § 523(a)(5), it is irrelevant that they may have mistakenly believed that the debt could be discharged. Moreover, the court believes the plaintiff's testimony that she never would have accepted the terms of the divorce decree had she thought the college expense agreement could be discharged by defendant's bankruptcy.

 The court hereby declares defendant's obligations under the college expense agreement to be nondischargeable under 11 U.S.C. § 523(a)(5). However, the court declines to enter a money judgment in favor of plaintiff. Some courts have found it proper for a bankruptcy court to go beyond a determination of nondischargeability under 11 U.S.C. § 523(a)(5) and to impose specific support obligations on the defendant. Others have concluded that such determinations are best left to the state family law courts. *In re Harrell*, 754 F.2d at 905–906 n. 5. This court agrees with the latter approach. Cf., *In re Comer*, 27 B.R. at 1020–1021.

## CONCLUSION

Judgment is granted in favor of plaintiff declaring any obligations incurred to date or in the future pursuant to the college expense agreement nondischargeable under 11 U.S.C. § 523(a)(5). The parties are directed to initiate proceedings in the appropriate state court in the event they are unable to agree as to the precise amounts due under the college expense agreement.