No. 2-09-0536     Filed: 9-17-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re MARRIAGE OF JAMES F. TRUHLAR, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Petitioner-Appellee, | ) ) | |
| and | ) ) | No. 90--D--2574 |
| DEBBIE M. TRUHLAR, | ) ) ) | Honorable Brian R. McKillip, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the opinion of the court:

Respondent, Debbie M. Truhlar, appeals from an order of the circuit court of Du Page County vacating a prior order requiring petitioner, James F. Truhlar, to contribute to the college expenses of one of their children. For the reasons set forth below, we reverse.

The relevant facts for the purposes of this appeal are not in dispute. In 1994, the trial court entered a judgment dissolving the parties' marriage. The judgment incorporated the parties' marital settlement agreement, which contained the following provision:

"EDUCATION

\*\*\*

2. The Husband and Wife shall each contribute to the costs of higher education of the children. The amount that each of the parties shall pay may be agreed upon by the parties at the time each child is to enter a school of higher education; and in the event that the parties

are unable to agree, the Court shall determine the amount that each party shall pay based upon each of the parties' ability to pay at that time and upon said child's desire and aptitude to enter a school of higher education. The Court shall also consider the amount that said child can contribute to the higher education in determining the contribution of each party. The contribution of each party is further conditioned on the fact that commencement of such higher education will occur within twelve months of graduation from a secondary school and terminate within sixty months of such date, excluding delays occasioned by illnesses or mandatory military service."

In 2008, Debbie filed a petition seeking James's contribution to the college expenses of their daughter, Ashley, who was approaching her eighteenth birthday. Evidence adduced at the hearing on the petition established that Ashley had been admitted to National-Louis University; she had obtained substantial financial assistance in the form of grants and scholarships; she held a part-time job; and she planned to live at home as a cost-saving measure. The evidence further showed that James had remarried; his sole source of income was social security disability benefits of $1,825 per month; and his wife's monthly earnings were approximately twice that amount. On July 10, 2008, the trial court ordered James to contribute $361.25 per month toward Ashley's college education.

James subsequently moved to vacate the order. In support of the motion, James argued, inter alia, that, under federal law, his social security disability benefits were beyond the reach of creditors, so there was no way to enforce the contribution obligation. The trial court agreed. Although the trial court noted authority that social security disability payments could be reached to satisfy a child support obligation, the trial court concluded that contribution to an emancipated child's college

education was not child support. Debbie timely appealed after the trial court denied her motion to reconsider.

Section 513 of the Illinois Marriage and Dissolution of Marriage Act (the Marriage Act) provides, in pertinent part:

"(a) The court may award sums of money out of the property and income of either or both parties or the estate of a deceased parent, as equity may require, for the support of the child or children of the parties who have attained majority in the following instances:

(1) When the child is mentally or physically disabled and not otherwise emancipated, an application for support may be made before or after the child has attained majority.

(2) The court may also make provision for the educational expenses of the child or children of the parties, whether of minor or majority age, and an application for educational expenses may be made before or after the child has attained majority, or after the death of either parent. The authority under this Section to make provision for educational expenses extends not only to periods of college education or professional or other training after graduation from high school, but also to any period during which the child of the parties is still attending high school, even though he or she attained the age of 19. ***

* * *

(b) In making awards under paragraph (1) or (2) of subsection (a), or pursuant to a petition or motion to decrease, modify, or terminate any such award, the court shall consider all relevant factors that appear reasonable and necessary, including:

(1) The financial resources of both parents.

(2) The standard of living the child would have enjoyed had the marriage not been dissolved.

(3) The financial resources of the child.

(4) The child's academic performance." 750 ILCS 5/513 (West 2008).

Pursuant to this provision, the trial court originally ordered James to contribute to Ashley's college education expenses. As noted, however, James successfully moved to vacate the order, persuading the trial court that his income, which consisted of social security disability benefits, was protected by section 407(a) of the Social Security Act (the Act), which prohibits the assignment or transfer of the future payment of benefits under subchapter II of the Act and exempts any benefits paid or payable under subchapter II from "execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law." 42 U.S.C. §407(a) (2006). The exemption covers social security disability payments. See DeTienne v. DeTienne, 815 F. Supp. 394, 396 (D. Kan. 1993). However, section 659(a) of the Act (42 U.S.C. §659(a) (2006)) carves out a limited exception to the exemption set forth in section 407(a), by waiving the United States's sovereign immunity with respect to certain proceedings to collect "child support or alimony." We note that, pursuant to section 407(b) of the Act, any statute creating an exception to the exemption must do so by express reference to section 407. 42 U.S.C. §407(b) (2006). James argues that section 659(a) does not satisfy this requirement. To the contrary, section 659(a) expressly states that the exception it creates applies "[n]otwithstanding any other provision of law (including section 407 of [the Act] ***)." (Emphasis added.) 42 U.S.C. §659(a) (2006).

For purposes of section 659(a), "child support *** means amounts required to be paid under a judgment, decree, or order *** issued by a court or an administrative agency of competent jurisdiction, for the support and maintenance of a child, including a child who has attained the age of majority under the law of the issuing State." (Emphasis added.) 42 U.S.C. §659(i)(2) (2006). In vacating the order that James contribute to Ashley's college education, the trial court reasoned that such contribution was not child support.

The dispositive issue is whether the payment of all or part of the college education of a child who has reached the age of majority constitutes payment for "the support and maintenance of the child" within the meaning of section 659(i)(2) and therefore constitutes child support. The legal obligation of parents to support their children corresponds to the children's "right to be given care by those who brought them into the world until they are old enough to take care of themselves." Kelley v. Kelley, 317 Ill. 104, 110 (1925). Support signifies the provision of life's necessities. Accord Huffman v. Huffman, 50 Ill. App. 3d 217, 222 (1977) (child support award was not an abuse of discretion "[i]n view of the relative incomes of the parties and the amount required to provide necessaries for the children"). As one court from a sister state has observed, "[f]rom earliest times the question of what is a necessary has frequently perplexed the courts. Under practically all the authorities, these things are necessary which include shelter, food, clothing, and medical attendance, together with an education." Esteb v. Esteb, 138 Wash. 174, 178, 244 P. 264, 265 (1926). The Esteb court noted, "As to the amount of education that should be considered necessary, courts have never laid down a hard and fast rule." Esteb, 138 Wash. at 178, 244 P. at 265. The Esteb court held as follows:

"[T]he question of what sort of an education is necessary, being a relative one, the court should determine this in a proper case from all the facts and circumstances. Nor should the court be restricted to the station of the minor in society, but should, in determining this fact, take into consideration the progress of society, and the attendant requirements upon the citizens of to-day." Esteb, 138 Wash. at 182, 244 P. at 267.

Similarly, the Supreme Court of North Dakota held that a statute pertaining to "the maintenance of the children of the marriage" authorized the trial court to order a trust fund established to pay for the children's college educations. Davis v. Davis, 268 N.W.2d 769, 778 (N.D. 1978), overruled in part on other grounds, Nelson v. Trinity Medical Center, 419 N.W.2d 886 (N.D. 1988). The Davis court stated, "We are not unaware of the increasing necessity of a college education or its equivalent ***." Davis, 268 N.W.2d at 778.

In Illinois, although the obligation to care for one's children ordinarily ends when they reach the age of majority (see generally Kelley, 317 Ill. at 110 ("The obligation of the father to support his children begins when the child is born and continues during the minority of the child")), the rule is not absolute. See Strom v. Strom, 13 Ill. App. 2d 354, 364 (1957). More than half a century ago, the Strom court rejected the proposition that "the jurisdiction of a court of chancery to provide for the care and education of a child ends the moment that child attains majority." Strom, 13 Ill. App. 2d at 364. According to the Strom court, "[w]here such care and education are necessary to equip the child for adult life and where the financial circumstances of the father are entirely adequate to meet such requirements, equity can and should continue its jurisdiction." Strom, 13 Ill. App. 2d at 364. Relying in part on Esteb, the Strom court concluded that "it is the obligation of a parent of ample means to support a child incapable of self-support beyond the period of that child's minority

and that this obligation includes the duty to provide not only care and bare necessities but also a college education, where that appears desirable in order to better equip the child for adult life." Strom, 13 Ill. App. 2d at 367. Section 513(a) of the Marriage Act is consistent with this understanding. Specifically, pursuant to section 513(a), an order requiring one or both parents to contribute to a child's education is within the trial court's authority to "award sums of money *** for the support of the child or children of the parties who have attained majority." (Emphasis added.) 750 ILCS 5/513(a) (West 2008).

Nonetheless, there appear to be no reported decisions considering whether the obligation to contribute to a child's college education is "support" within the meaning of section 659 of the Act. However, in the realm of federal bankruptcy law, courts have frequently considered whether such obligations are support within the meaning of section 523(a)(5) of the United States Bankruptcy Code (the Code) (11 U.S.C. §523(a)(5) (2000)), which, prior to 2005, provided that certain debts "for alimony to, maintenance for, or support of [the debtor's] spouse or child" pursuant to a domestic relations judgment or order, or an agreement of the parties, were not dischargeable. See, e.g., In re Seixas, 239 B.R. 398 (B.A.P. 9th Cir. 1999) (holding that, based on the plain language of the parties' agreement to contribute to children's college education, debtor's obligation under the agreement was nondischargeable support); In re Warren, 160 B.R. 395, 400 (Bankr. D. Me. 1993) (holding that, because purpose and function of parents' agreement to share anticipated expenses of their daughters' college education was to "ensure [their] daughters' 'economic safety' through their college years," father's obligations under the agreement were " 'in the nature of support' " and could not be discharged in bankruptcy); In re Pierce, 95 B.R. 154, 159 (Bankr. N.D. Cal. 1988) (holding that contractually assumed debt for expense of college education "should be excepted from discharge if

the parties intended it as support and if it can reasonably be construed as support"); In re Lineberry, 9 B.R. 700, 706-08 (Bankr. W.D. Mo. 1981) (holding that a provision of a separation agreement requiring the husband to make periodic payments to be held by the wife for the college education of the parties' children was in the nature of support, even though the payments were not contingent upon the children actually attending college).

Pursuant to the above cases, the applicability of section 523(a)(5) of the Code depends not on how an obligation is designated, but on whether it is "in the nature of alimony, maintenance, or support." Lineberry, 9 B.R. at 704. Although the question of whether an obligation constitutes "support" is ultimately one of federal law, because "there is no federal domestic relations law, the *** court must naturally consider state law in determining the appropriate federal standard." Pierce, 95 B.R. at 158. "[T]he inquiry focuses on the purpose and function of the obligation in light of circumstances as they existed at the time of its creation." Warren, 160 B.R. at 399. Thus, in determining whether an obligation is in the nature of support, the word "support" should be read broadly. Pierce, 95 B.R. at 159. Moreover, "a parent's obligation to pay a child's college education expenses pursuant to a settlement agreement or court order may be nondischargeable under §523(a)(5) even though the parent does not have any legal duty to support a child once that child reaches the age of majority under applicable state law." Seixas, 239 B.R. at 403-04. Generally speaking, courts have found agreements, judgments, and orders requiring one or both parents to contribute to a child's college education to qualify as "support," unless it appears that the true purpose of the agreement, judgment, or order was to offset a disparity in the division of marital property. Compare Seixas, 239 B.R. at 405 (affirming bankruptcy court's conclusion that obligation to contribute to college education was support because, inter alia, the agreement concerning college

expenses " 'does not appear to ... attempt to balance out an unequal property division' ") and Warren, 160 B.R. at 400 (noting that parties' agreement to share anticipated expenses of their daughter's college education "was not a property division device in disguise") with In re Hale, 289 B.R. 788, 790 (B.A.P. 1st Cir. 2003) (holding that debtor's obligation under separation agreement to pay daughter's college tuition was not support where the agreement specifically provided that child support did not include college education costs and "expressly characterize[d] the obligation as 'property settlement between the parties' given 'in full satisfaction of the equitable division ... of marital assets' ").

In this case, the record is devoid of any evidence that the true purpose of the agreement to contribute to the children's college education was to offset a disparity in the distribution of marital property. Rather, the plain language of the agreement reflects an intention that both parties would bear at least some financial responsibility for the education of their children beyond high school and that the trial court would determine the amount of each party's contribution based, in part, on their respective abilities to pay. See In re Marriage of Thomas, 339 Ill. App. 3d 214, 228 (2003) (stating that, when interpreting a marital settlement agreement, a court may not interpret the contract in a way contrary to the plain language of the terms). As discussed above, Illinois and other jurisdictions have recognized that, in proper cases, a college education is necessary to prepare a child for adult life and can thus be grouped with the child's more basic needs, such as food, shelter, medical care, and parental supervision. Consequently, contribution to Ashley's college education qualifies as "support," and section 659 of the Act authorizes proceedings against the federal government to collect James's social security disability benefits in satisfaction of that obligation. Accordingly, we

hold that the trial court erred when it vacated its prior contribution order on the basis that James's income was exempt from such collection proceedings.

For the foregoing reasons, we reverse the order of the circuit court of Du Page County that vacated the July 10, 2008, order requiring James to contribute to Ashley's educational expenses.

Reversed.

McLAREN and BURKE, JJ., concur.