# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*In re Marriage of Chee*, 2011 IL App (1st) 102797

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF NELIA C. CHEE, Petitioner-Appellant, and SAMUEL V. CHEE, Respondent-Appellee. |
| District & No. | First District, Sixth Division<br>Docket No. 1-10-2797 |
| Filed | July 22, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A petition seeking the adjudication of the undergraduate education expenses of the parties' two children was improperly dismissed on the ground that the petition was filed after the children had graduated, since section 513 of the Illinois Marriage and Dissolution of Marriage Act precludes an award of undergraduate expenses beyond a basic college degree unless the child is physically or mentally disabled and not otherwise emancipated, but an award of such expenses may be made after an undergraduate degree is bestowed. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-D-31210; the Hon. Veronica B. Mathein, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |

Counsel on
Appeal

Terry D. Slaw, of Alan H. Shifrin & Associates LLC, of Chicago, for appellant.

Craig B. Hammond, of Craig B. Hammond, Ltd., of Chicago, for appellee.

Panel

JUSTICE McBRIDE delivered the judgment of the court, with opinion. Presiding Justice Garcia and Justice Cahill concurred in the judgment and opinion.

**OPINION**

¶ 1    The issue on appeal is whether, under section 513(a)(2) of the Illinois Marriage and Dissolution of Marriage Act, a court has authority to adjudicate a petition to share a child's undergraduate school expenses, even if the petition is filed after the child has graduated. 750 ILCS 5/513(a)(2) (West 2008) (Marriage Act). The Marriage Act states in relevant part, "The authority under this Section to make provision for educational expenses, except where the child is mentally or physically disabled and not otherwise emancipated, terminates when the child receives a baccalaureate degree." 750 ILCS 5/513(a)(2) (West 2008). The circuit court of Cook County construed this language to require dismissal of Nelia C. Chee's petition to allocate college expenses of the two children she had with Samuel V. Chee, on grounds that the children's baccalaureate degrees predated Nelia's petition. Nelia appeals, contending the statute actually precludes the award of expenses incurred for post-baccalaureate education, such as continuing studies or pursuing a second degree, and that her petition for the children's baccalaureate expenses was timely.

¶ 2    Nelia first petitioned the circuit court on December 4, 2008, when she was 54 years old, for dissolution of her 24-year marriage to Samuel, who was then 52. Samuel responded, however, that he was never legally married to Nelia, because two months before their wedding ceremony in Los Angeles, California, on October 29, 1984, he married Merlinda C. Casugay (Chee) in Malolos City, Philippines; that he was still married to Merlinda and residing with her in Pomona, California; and that his bigamous marriage should be declared null and void. Section 212 of the Marriage Act prohibits marriage prior to the dissolution of an earlier marriage of one of the parties. 750 ILCS 5/212(a)(1) (West 2008). According to section 301, a court shall enter a judgment declaring the invalidity of any marriage which is prohibited. 750 ILCS 5/301 (West 2008). Section 305 provides that a person who has gone through a marriage ceremony and cohabited with another to whom he is not legally married in the good-faith belief that he was married to that person is a putative spouse with rights of a legal spouse, such as maintenance. 750 ILCS 5/305 (West 2008). He acknowledged that while he and Nelia were purportedly married to each other, they purchased a condominium

-2-

unit in Prospect Heights, Illinois, and had a son on October 5, 1985, and a daughter on November 28, 1986.

¶ 3    Nelia next filed a motion for summary judgment (735 ILCS 5/2-1005(a) (West 2008)), in which she asked the court to either dissolve the marriage or declare it void, but, regardless, to "hold respondent responsible for one third of all past, current, and future educational expenses of the children under 750 ILCS 5/513(a)(2) [(West 2008)]." After hearing arguments on May 5, 2010, the trial judge entered a written order which did not expressly grant or deny Nelia's motion for summary judgment. The order, which was hand drafted by Samuel's attorney, indicates that the court found the marriage void, that Samuel acknowledged paternity of the two children, and that the court was retaining jurisdiction "over the petitioner and the children and the respondent pursuant to the Illinois Parentage Act and 750 ILCS 5/513 [(West 2008)]," which is the section of the Marriage Act which authorizes the trial court to allocate educational expenses for unemancipated children who have attained the age of majority.[1] The Marriage Act refers to the award of educational expenses as a form of child "support." 750 ILCS 513(a) (West 2008).

¶ 4    A few weeks later, on June 1, 2010, Nelia filed the petition currently at issue, which was entitled "Petition for Section 513 College Support," and requested one-third of the children's college expenses. Nelia and Samuel's son had been awarded a bachelor's degree in finance and marketing from Loyola University Chicago in May 2008, which was before Nelia filed for divorce in December 2008, and their daughter completed a bachelor's degree in anthropology from the same institution in May 2009. Neither child received any financial contribution from Samuel toward his or her college expenses.

¶ 5    In a motion to dismiss the support petition pursuant to 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2008)), Samuel argued that the Marriage Act should be construed as depriving the trial court of authority to adjudicate educational expenses as soon as each child graduated from Loyola. The judge granted Samuel's motion and denied Nelia's motion to reconsider the ruling.

¶ 6    Nelia contends that when properly construed, the statute is applied in parentage and marital dissolution cases such as this one and allows the court to order parents and their children, as equity dictates, to share the costs of the children's undergraduate education or

---

[1]The order concludes with two sentences: (1) "Wherefore the court orders the circuit court of Cook County has jurisdiction over the petitioner and the children and the respondent pursuant to the Illinois Parentage Act and 750 ILCS 5/513" and, (2) "This matter is off call." Despite the statement that the matter was "off call," at a subsequent court date on August 23, 2010, the judge who entered the order and the parties' attorneys were in agreement that the order indicated the case was still pending and the court "ha[d] *retained* jurisdiction over the matter." (Emphasis added.) Our review of the record discloses that other orders drafted by Samuel's attorneys conclude either with an indication of the next scheduled court date or with the statement "Matter off call" or "This matter is off call." Accordingly, we construe the statement "This matter is off call" to simply mean there were no specific future court dates scheduled as of May 2010, and that the judge had in fact retained jurisdiction of the case because she and the parties were anticipating motion practice regarding the children's expenses.

equivalent occupational training. She argues it makes no sense to strip the trial court of authority to award educational expenses the moment an undergraduate diploma is in hand. Instead, the legislature's intent in enacting this statute was to preclude the award of expenses beyond a basic college degree unless the child is physically or mentally disabled and not otherwise emancipated. She asks us to reverse the dismissal of her expense petition and remand the matter so that, in its discretion, the trial court may order the parties to share the expense of providing their son and daughter with adequate schooling. Samuel responds that if the legislature intended to preclude awards for graduate or other advanced schooling, it would have expressly said so, and that Nelia has added her own terms and conditions to the legislature's plain wording. He contends the patent absurdity of Nelia's interpretation is revealed by the fact that a parent could pursue educational expenses 50 years after a child received a degree, as long as the petition was limited to undergraduate expenses. Samuel contends the trial court reached the right conclusion and must be affirmed.

¶ 7        Statutory interpretation is a question of law and we address questions of law *de novo* on appeal. *In re Marriage of Kates*, 198 Ill. 2d 156, 163, 761 N.E.2d 153, 157 (2001). In interpreting statutes, a court's primary goal is to ascertain and give effect to the true intent of the legislature, and the best indicator of that intent is considered to be the statutory language, when given its ordinary and plain meaning. *Kates*, 198 Ill. 2d at 163, 761 N.E.2d at 157. When a statute is clear and unambiguous, the legislative intent that is discernible from this language must prevail, and no resort to other interpretive aids is necessary. *Kates*, 198 Ill. 2d at 163, 761 N.E.2d at 157. However, if a statute is capable of being understood by reasonably well-informed persons in two different ways, it is ambiguous, and a court may resort to other aids of construction, such as considering the consequences that would result in construing the statute one way or the other. *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 11-12, 919 N.E.2d 300, 306 (2009); *In re Marriage of Logston*, 103 Ill. 2d 266, 284, 469 N.E.2d 167, 174 (1984) (where a statute is ambiguous, courts may examine legislative history, related legislation, and the future consequences that would result from adopting one interpretation over another). Statutes must be read as a whole with all relevant parts considered, and they should be construed, if possible, so that no term is rendered superfluous or meaningless. *Kates,* 198 Ill. 2d at 163, 761 N.E.2d at 157.

¶ 8        As general rule, a parent's duty to support a child ends when the child reaches the age of majority. *In re Marriage of Truhlar*, 404 Ill. App. 3d 176, 180, 935 N.E.2d 1199, 1203 (2010). However, during the latter part of this century, as a college education or equivalent specialized schooling became increasingly necessary to prepare children for self-sufficiency, divorce courts began routinely allocating college expenses for children who had attained the age of majority, pursuant to the judiciary's general authority to order child support. *Truhlar*, 404 Ill. App. 3d at 180-81, 935 N.E.2d at 1202-03 (surveying authority, including *Davis v. Davis*, 268 N.W.2d 769, 778 (N.D. 1978), which stated in 1978 that there is an "increasing necessity of a college education or its equivalent"); *Strom v. Strom*, 13 Ill. App. 2d 354, 367, 142 N.E.2d 172, 179 (1957) (stating in 1957 that a parent's obligation includes provision of "not only care and bare necessities but also a college education, where it appears desirable in order to better equip the child for adult life"); *Esteb v. Esteb*, 244 P. 264, 267 (Wash. 1926) ("It cannot be doubted that the minor who is unable to secure a college education is

generally handicapped in pursuing most of the trades or professions of life, for most of those with whom he is required to compete will be possessed of that greater skill and ability which comes from such an education.").

¶ 9 The legislature codified the common law and specified in section 513 that "[t]he authority under this Section [of the Marriage Act] to make provision for educational expenses" of the child or the children of the parties extends to "college education or professional or other training after graduation from high school." 750 ILCS 5/513(a)(2) (West 2008). Permissible "educational expenses may include, but shall not be limited to, room, board, dues, tuition, transportation, books, fees, registration and application costs, medical expenses including medical insurance, dental expenses, and living expenses during the school year and periods of recess." 750 ILCS 5/513(a)(2) (West 2008). Section 513 educational expenses are considered a form of child support. *Petersen v. Petersen*, 403 Ill. App. 3d 839, 844, 932 N.E.2d 1184, 1188 (2010).

¶ 10 No comparable statute has been created for families that remain intact, which the supreme court attributed to the following:

"It cannot be overemphasized that a divorce, by its nature, has a major economic and personal impact on the lives of those involved. That the legislature is cognizant of this is evident by the fact that an express purpose of the [Marriage] Act is to 'mitigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage.' [Citation.] Commonly, a divorce means that the spouses will go their separate ways, live independent lives, and accrue additional expenses which they would not have had had the family remained united. Unfortunately, it is not the isolated exception that noncustodial divorced parents, because of such additional expenses or because of a loss of concern for children who are no longer in their immediate care and custody, or out of animosity directed at the custodial spouse, cannot be relied upon to voluntarily support the children of the earlier marriage to the extent they would have had they not divorced. One appellate court stated in ordering a divorced parent to contribute to the college education of his non-custodial child:

'In a normal household, parents *** direct their children as to when and how they should work or study. That is on the assumption of a normal family relationship, where parental love and moral obligation dictate [doing] what is best for the children. Under such circumstances, natural pride in the attainments of a child *** would demand of parents provision for a college education, even at a sacrifice.

When we turn to divorced parents–a disrupted family–society cannot count on normal protection for the child, and it is here that equity takes control to mitigate the hardship that may befall children of divorced parents.' [Citation.]

*** It is certainly a legitimate legislative purpose to minimize any economic and educational disadvantages to children of divorced parents. If parents could have been expected to provide an education for their child of majority age absent divorce, it is not unreasonable for the legislature to furnish a means for providing that they do so

-5-

after they have been divorced. We have no hesitation, therefore, in concluding that it is reasonably related to that legitimate purpose for the legislature to permit the trial court, in its sound discretion, to compel divorced parents to educate their children to the same extent as might reasonably be expected of nondivorced parents." *Kujawinski v. Kujawinski*, 71 Ill. 2d 563, 579-80, 376 N.E.2d 1382, 1390 (1978).

¶ 11 Nonetheless, " 'As to the amount of education that should be considered necessary, courts have never laid down a hard and fast rule.' " *Truhlar*, 404 Ill. App. 3d at 180, 935 N.E.2d at 1202 (quoting *Esteb*, 244 P. at 265). In 1999, the legislature amended section 513 with the language at issue on appeal (Pub. Act 91-204, § 5 (eff. Jan 1, 2000)), which states "The authority under this Section to make provision for educational expenses, except where the child is mentally or physically disabled and not otherwise emancipated terminates when the child receives a baccalaureate degree." Since that amendment, the legislature has made only minor revisions to section 513, and none of them concern the language at issue here.

¶ 12 Other paragraphs of section 513 which are not directly relevant to this appeal indicate the supporting parent is generally entitled to access to the child's academic transcripts, records, and grade reports, and that when making or modifying an award, the court shall consider factors such as both parents' financial resources, the standard of living the child would have enjoyed had the marriage not been dissolved, the child's financial resources, and the child's academic performance. 750 ILCS 5/513 (West 2008).

¶ 13 And finally, we note that a paragraph of section 513 which is not tied to education provides for awards to support children who have reached the age of majority but are "mentally or physically disabled and not otherwise emancipated." 750 ILCS 5/513(a)(1) (West 2008).

¶ 14 We find that the clear and plainly worded statute addresses the subject matter of educational expense petitions, as Nelia argues, rather than the timing of their adjudication, as Samuel argues. Although it appears at first that the statute plausibly could be construed either way, an analysis of the language at issue within the context of the Marriage Act bears out Nelia's interpretation. As just summarized above, in section 513, the legislature authorized awards of support for a child who is mentally or physically disabled and not otherwise emancipated. 750 ILCS 5/513(a)(1) (West 2008). The legislature also used section 513 to authorize awards for a an unemancipated child who pursues a "college education or professional or other training after graduation from high school," and then logically "terminates [the court's authority] when the child receives a baccalaureate degree." 750 ILCS 5/513(a)(2) (West 2008). If an expense petition is due to the pursuit of education or training, the statute describes the types of expenses that are appropriately included in a petition, such as tuition, school fees, and reasonable living expenses, and indicates that, if an award is made, the supporting parent is usually entitled to the child's progress reports. 750 ILCS 5/513(a)(2) (West 2008). Regardless of whether a petition is based on a child's disability or a child's pursuit of a basic education or professional training, the statute specifies factors the court will ordinarily analyze in resolving a request. 750 ILCS 5/513(b) (West 2008). Thus, section 513 comprehensively describes the contents and consequences of filing a petition regarding expenses incurred while a child is under a disability or obtaining a college degree or occupational training. Section 513 covers the "what" of an expense petition, not the

"when." Construing the statute as we have precludes petitions pursuant to section 510(a)(2) for continuing education or advanced schooling (unless the child is mentally or physically disabled and not otherwise emancipated), which is logical because post-baccalaureate education is not the norm in our society and is generally not necessary to prepare offspring to be financially self-sufficient. The language at issue thus prevents needless expense petitions and unnecessary litigation, promoting both judicial economy and predictability in the lives of the children of divorced parents and the individuals who support them.

¶ 15    Moreover, Samuel's proposed construction would impose a deadline for not only filing *but adjudicating* a child's last educational expense petition, which is problematic. In order to ensure that expense petitions were adjudicated before the child was handed a diploma, a petitioning parent would have to compile and file his or her expense request(s) well in advance of graduation date and obtain the cooperation of the other parent in briefing and scheduling the matter(s) for hearing. The potential to miss a deadline and avoid some of the substantial expenses of a child's baccalaureate education might encourage some litigants to delay rather than cooperate. The courts would have to accommodate otherwise routine petitions on an expedited basis and perhaps even give them scheduling priority over other matters which were truly time-sensitive but not under a statute-imposed deadline. There is no discernable benefit to forcing the pace of expense petitions in this way, other than that petitioning parents would probably be reimbursed more promptly. However, in the rare instance that litigants perceive a need for expedited briefing schedules and hearing dates, they request them, and courts, in their discretion, grant requests that are reasonable. It cannot be seriously contended that the legislature intended for the language at issue to indiscriminately inconvenience parents of divorced children, to disadvantage other litigants, and to interfere with a court's efficient administration of its docket. We conclude that Samuel's construction of the statute is incorrect. *In re Mary Ann P.*, 202 Ill. 2d 393, 406, 781 N.E.2d 237 (2002) (courts should construe statute in way that avoids absurd, unreasonable, unjust, or inconvenient results); *Landis*, 235 Ill. App. 3d at 12, 919 N.E.2d at 306 (construing ambiguous statute in the way that was "more reasonable" and consistent); *In re Marriage of Logston*, 103 Ill. 2d at 284, 469 N.E.2d at 175 (rejecting alternative interpretation which would shield ex-husband from contempt finding).

¶ 16    We do not share Samuel's concern that a parent will wait 50 years to request reimbursement for educational expenses. We consider Nelia typical of most litigants in the domestic relations division of the circuit court, in that she contemplated these expenses when she contemplated ending her marriage to Samuel. When she motioned for summary judgment as to whether the marriage should be dissolved or declared void, she repeatedly asked the court to "hold respondent responsible for one third of all past, current, and future educational expenses of the children under 750 ILCS 5/513 (a)(2) [(West 2008)]," and within a few weeks of the hearing date, she followed up with her "Petition for Section 513 College Support."

¶ 17    We also disagree with Samuel's contention that *Petersen* supports the trial judge's dismissal of Nelia's petition. *Petersen*, 403 Ill. App. 3d 839, 932 N.E.2d 1184. Samuel's application of this case is an indirect argument that the order entered on May 5, 2010, regarding Nelia's request for summary judgment was a final, appealable order which

concluded the litigation. In *Petersen*, after the parents divorced in 1999, their first child attended college between 2002 and 2006, their second child started college in 2004 and was in his second year, and their third child was in his first year when the mother returned to court in 2007 with a petition requesting judicial allocation of the children's educational expenses. *Petersen*, 403 Ill. App. 3d 839, 932 N.E.2d 1184. The 1999 divorce judgment was a final judgment order which did not assign any educational expenses to either parent and only stated, "The Court expressly reserves the issue of each party's obligation to contribute to the college or other education expenses of the parties' children pursuant to Section 513 of [the Marriage Act]." (Internal quotation marks omitted.) *Petersen*, 403 Ill. App. 3d at 841, 932 N.E.2d at 1186. Accordingly, the section 513 petition the mother filed eight years later sought a modification of a final judgment, bringing the case within the scope of section 510(a) of the Marriage Act and limiting the father's liability for his children's education to the notice date of the mother's expense petition. *Petersen*, 403 Ill. App. 3d at 844-45, 932 N.E.2d at 1188-89; 750 ILCS 5/513, 510(a) (West 2008). He was therefore legally liable for none of the first child's college expenses and only the portion of the two younger children's college expenses that were incurred as of the mother's postjudgment petition. If *Petersen* were controlling here, Samuel would not be legally liable for his children's college expenses because Nelia's petition was filed after a final judgment. In our opinion, however, the May order regarding Nelia's motion for summary judgment was not a final order because it did not resolve all the issues between the parties. *In re Marriage of Leopando*, 96 Ill. 2d 114, 449 N.E.2d 137 (1983) (until all ancillary issues are resolved, a petition for dissolution is not fully adjudicated). Nelia sought summary judgment only as to whether the marriage should be dissolved or declared void, she expressly requested adjudication of Samuel's liability for the children's education expenses, the court's order included citation to section 513, and during additional proceedings on August 5, 2010, and August 23, 2010, the parties and the court indicated the educational expenses were still outstanding and subject to the court's adjudication. The circumstances were similar to those in *In re Marriage of Bennett*, 306 Ill. App. 3d 246, 713 N.E.2d 1268 (1999), in that most of the children's educational expenses slightly predated the petition for dissolution and could have been properly considered during the pendency of the suit contemporaneously with other ancillary issues such as the division of marital property. Alternatively, in the event we have misconstrued the record on appeal and the summary judgment order was actually intended to be a final, appealable order which concluded the entire case, then Nelia's section 513 petition would be a timely motion to reconsider the ruling. Nelia filed the section 513 petition on June 1, 2010, before the May 5, 2010 order became final with the passage of 30 days and was properly considered while the court still had jurisdiction to consider any of its terms, including the division of assets, debts, and liability for educating the two children. Thus, under either scenario, the court could properly consider Nelia's petition for both children's educational expenses, and *Petersen* is not controlling.

¶ 18    For these reasons, we reverse the dismissal of Nelia's petition for allocation of the children's educational expenses and remand the matter to the trial court with directions to conduct further proceedings consistent with the views expressed in this opinion.

¶ 19    Reversed and remanded with directions.